Argued February 24, affirmed September 6, 1978

# OREGON CITY FEDERATION OF TEACHERS et al,
### *Petitioners,*
### *v.*
# OREGON CITY EDUCATION ASSOCIATION et al,
### *Respondents.*
### (Nos. C-26-76, C-122-76, CA 9012)
584 P2d 303

Don S. Willner, Portland, argued the cause for petitioners. With him on the briefs was Willner, Bennett, Riggs & Skarstad, Portland.

Edward P. Heid, Eugene, argued the cause for respondent Oregon City Education Association. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

James C. Rhodes, Assistant Attorney General, Salem, waived appearance for respondent Employment Relations Board.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

## TANZER, J.

This is a review of an order of the Employment Relations Board (ERB) dismissing an unfair labor practice complaint against the Oregon City Education Association (Association). The Association is the certified bargaining representative of all teachers employed by Oregon City School District No. 62. Petitioner Oregon City Federation of Teachers (Federation) is a rival union. Petitioners Rackley and Evans are bargaining unit members who belong to the Federation. During the 1975-76 academic year Rackley was also a member of the Association.

The substance of petitioners' complaint is that the Association improperly collected and withheld "fair share" payments[1] from non-Association members of the bargaining unit. The first count of petitioners' complaint relates to fair share payments collected during the 1974-75 academic year. The second count relates to payments collected during the 1975-76 academic year.

The Federation and Rackley initially filed the complaint on July 1, 1976, challenging only those payments collected during 1975-76. On October 5, 1976, they amended the complaint to include fair share payments made in 1974-75. Evans joined the proceedings as a complainant on November 10, 1976, the date of ERB's hearing on the complaint.

### FACTS

The Association's collective bargaining agreement with the school district for 1974-75 included a fair

---

[1] ORS 243.650(10) defines "fair-share agreement":

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employes whereby employes who are not members of the employe organization are required to make an in-lieu-of-dues payment to an employe organization. Such agreement shall reflect the opinion of a majority of the employes in the bargaining unit."

share provision which required teachers in the bargaining unit, who were not members of the Association, to make payments-in-lieu-of-dues.[2] The bargaining unit ratified this agreement, by majority vote, on April 16, 1974. There was no separate vote on the fair share issue.

Thereafter, the Federation filed an unfair labor practice complaint before ERB contending, inter alia, that a separate fair share vote was required. ERB rejected this argument and dismissed the Federation's complaint. The Association received fair share payments from non-member teachers throughout the 1974-75 academic year.

In June, 1975, the bargaining unit approved, by majority vote, a collective bargaining agreement for 1975-76 which included a fair share provision similar to the one included in the previous year's contract. Unlike the 1974-75 agreement, it also required the Association to furnish the school district with evidence that a majority of the bargaining unit had approved fair share before October 1, 1975. Although there had been no separate vote on fair share, the Association presented the district with evidence of the bargaining unit's approval of the entire agreement and the school district began deducting fair share assessments from the salaries of non-member teachers.

On December 15, 1976, this court reversed ERB's ruling on the Federation's unfair labor practice complaint arising from the 1974-75 contract. We held that ORS 243.650(10) requires that majority approval of a fair share provision be expressed separately from

_____

[2] " 'Payment-in-lieu-of-dues' means an assessment to defray the cost for services by the exclusive representative in negotiations and contract administration of all persons in an appropriate bargaining unit who are not members of the organization serving as exclusive representative of the employes. The payment shall be equivalent to regular union dues and assessments, if any, or shall be an amount agreed upon by the public employer and the exclusive representative of the employes." ORS 243.650(16).

ratification of the entire collective bargaining agreement. *Oregon City Fed. of Teach. v. PERB,* 23 Or App 540, 543 P2d 297 (1975). The case was remanded to ERB for proceedings consistent with that decision.

On April 27, 1976, ERB set aside the ratification of the fair share provision in the 1974-75 collective bargaining agreement. ERB was not requested to and did not order the Association to return fair share monies withheld under the agreement; nor did it declare that failure to do was an unfair labor practice.

Following this court's ruling in *Oregon City Fed. of Teach. v. PERB, supra,* the school district ceased deducting fair share payments under the 1975-76 agreement. On February 4, 1976, in a separate vote, a majority of the bargaining unit voted in favor of the fair share provision. By its terms the approval was retroactively effective from the commencement date of the 1975-76 agreement. The school district nevertheless refused to resume fair share deductions and the Association filed an unfair labor practice complaint.[3] ERB concluded that the February vote should be given retroactive effect. It therefore ordered the school district to comply with the fair share provision and to make all past due fair share payments. ERB's order was not appealed.

In dismissing the present unfair labor practice complaint, ERB ruled that its decision in the proceeding between the school district and the Association was controlling. Its order does not restate the reasoning set forth in its prior decision. No reason was given for dismissing that portion of the complaint relating to the 1974-75 agreement.[4]

---

[3] ERB denied the Federation's request to intervene in that proceeding on the ground that it had no institutional standing and did not claim to represent any named individuals.

[4] ERB's processing of unfair labor practice complaints is controlled by ORS 243.676, which provides in part:

"(2) Where, as a result of the hearing required pursuant to paragraph (c) of subsection (1) of this section, the board finds that any

## STANDING

■ An unfair labor practice complaint may be brought by an "injured party." ORS 243.672(4).[5] The type of injury which must be pleaded and proved in order to establish standing to bring such a complaint is essentially the same as is required of litigants in other contests. The petitioner must show that he has suffered or will suffer a substantial injury as a consequence of the alleged unfair labor practice.

■ Citing ORS 243.672(4), ERB ruled that the Federation did not have standing, as a minority union, to challenge the Association's conduct with respect to fair share payments. This ruling was correct because the Federation neither pleaded nor proved that it had suffered any direct injury from the conduct complained of. Thus, the Federation's sole capacity in this

---

person named in the complaint has engaged in or is engaging in any unfair labor practice charged in the complaint, the board shall:

"(a) State its findings of fact;

"(b) Issue and cause to be served on such person an order that he cease and desist from the unfair labor practice; and

"(c) Take such affirmative action, including but not limited to the reinstatement of employes with or without back pay, as necessary to effectuate the purposes of ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785.

"(3) Where the board finds that the person named in the complaint has not engaged in or is not engaging in an unfair labor practice, it shall issue an order dismissing the complaint."

Under this statute it is unclear whether an order dismissing an unfair labor practice complaint must be in the form of a contested case order containing findings of fact, conclusions of law and an explication of how those findings and conclusions support the order of dismissal. If such is required, the order in this case is deficient as to petitioners' 1974-75 claim. Although petitioners appear to challenge the order on this ground, the arguments of both parties focus on the merits of the dismissal order. Because the facts are undisputed and the legal analysis straightforward, we shall determine this aspect of the case without benefit of a full order from ERB.

[5] ORS 243.672(4) provides:

"An injured party may file a written complaint with the board not later than 180 days following the occurrence of an unfair labor practice."

proceeding is as representative of the named individual petitioners. ORS 243.782.[6]

■ The injury to the individual petitioners is the alleged wrongful withholding of a portion of their salaries as fair share payments. Petitioner Evans was a member of the bargaining unit, but not a member of the Association during both relevant contract years. Thus, fair share payments were withheld from his wages during both years and he has standing to challenge the propriety of such withholding under both contracts.

Petitioner Rackley was not a member of the Association during the 1974-75 academic year. The following year she joined the Association and paid union dues rather than fair share payments. Thus, petitioner Rackley only has standing to challenge fair share withholding under the 1974-75 contract.[7]

## 1975-76 PAYMENTS; TIMELINESS

■ An unfair labor practice complaint must be filed "not later than 180 days following the occurrence of an unfair labor practice." ORS 243.672(4). Calculation of the time period in this case is complicated by the periodic nature of the acts complained of and the amendments to the complaint adding a new claim of a new party.

When originally filed on July 1, 1976, the complaint only raised the fair share issue under the 1975-76 contract as to the Federation and petitioner

---

[6]ORS 243.782 provides:

"(1) For purposes of proceedings commenced pursuant to ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785, a person may be represented by counsel or any other agent authorized by such person.

"(2) As used in subsection (1) of this section, 'person' means any individual, a labor organization or a public employer."

[7]This issue seems to relate to the existence of a defense rather than whether there was an injury. It was treated by the parties before the agency as a standing matter and, because the resolution is the same either way, we also so treat it.

[ 33 ]

Rackley, neither of which had standing to challenge the Association's collection of fair share payments under that agreement. Thus, the initial filing was a nullity in this regard.

A valid claim as to the 1975-76 academic year was not filed until November 10, 1976, when petitioner Evans became a party to the proceeding. *Cf., Richard v. Slate,* 239 Or 164, 396 P2d 900 (1964).

Petitioners contend the first fair share payment was the beginning of a continuing violation of the agreement which began prior to and continued into the 180-day period preceding the November 10 filing.

It is preferable, however, to regard each payment as a separate violation. This conclusion is consistent both with the practical fact that each payment is a distinct financial injury and with the purpose of the statute to require prompt complaint. Therefore, if, as petitioners contend, the fair share provision of the 1975-76 agreement was not validly ratified, then each monthly withholding of payments-in-lieu-of-dues constituted a separate violation of the agreement and of the collective bargaining law. The complaint can reach those payments made within 180 days of its filing, November 10, 1976. Therefore, as to the 1975-76 contract, only the validity of the May and June, 1976, assessments for petitioner Evans may be adjudicated in this proceeding.

## 1974-75 PAYMENTS; RES JUDICATA

The claim as to the fair share payments in 1974-75 is distinct from the 1975-76 claim. The earlier claim arose under a different collective bargaining agreement and its resolution turns on different facts. The filing date for that claim was October 5, 1976, the date that it was added as a separate count in the complaint. *Cf., Credit Bureaus v. Allen,* 251 Or 616, 447 P2d 300 (1968).

Unlike the other count in their complaint, petitioners' claim as to the 1974-75 agreement is not

predicated upon the impropriety of monthly fair share assessment, those payments having been made prior to 180 days before the applicable filing date. Rather, the theory underlying petitioners' 1974-75 claim is that, after ERB issued an order of April 27, 1976, in *Oregon City Fed. of Teach. v. PERB,* declaring the fair share payments to have been improperly collected, the Association's continued refusal to return those payments constituted a violation distinct and separately actionable from the initial wrongful withholding. That refusal occurred within 180 days of the complaint and therefore, petitioners contend, the complaint is timely.

■ Respondent answers, and we agree, that the new claim for 1974-75 is barred by the doctrine of res judicata. The Federation, presumably acting on behalf of its membership including Evans and Rackley,[8] was the petitioner in *Oregon City Fed. of Teachers v. PERB* and the Association was a respondent. The same agreement and payments were at issue. The remedy sought here, repayment of fair share payments, was an available remedy in the first proceeding under ORS 243.676(2)(b), which grants broad authority to ERB to order that respondent cease and desist from wrongfully holding the funds, and ORS 243.676(2)(c), which authorizes ERB to order "affirmative action" to effectuate the purposes of the Public Employee Bargaining Act. That relief was not included in the order, but there was neither a motion to do so nor an objection to the omission.

■ The judicial rules of res judicata are not transferable in every respect to administrative procedure. Generally, they are applicable where prompt, orderly problem resolution is desirable, but not where the

---

[8]The parties have analyzed this issue in terms of res judicata rather than collateral estoppel. We also analyze in terms of res judicata, but we note that because of the relationship of the petitioners and the representational responsibility of the Federation and because the result would be the same either way, *see, Siegel v. Gresham Grade Teachers Assn.,* 32 Or App 541, 574 P2d 692 (1978).

[ 35 ]

procedure or subject mattter by their nature suggest a need for greater flexibility. Professor Davis says:

"As a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata as developed in the court system are fully applicable to *some* administrative proceedings. The reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations. The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor." (Footnote omitted; original emphasis.) K. Davis, Administrative Law Treatise, 548, § 18.02 (1958).

The parties agree that the illegality of the 1974-75 withholding was established as res judicata in the first case. The issue here is whether res judicata will bar a subsequent proceeding for further relief.

■ The prevention of harassment by successive legal proceedings and the promotion of economy of the resources of the adjudicative system have been characterized as the "principle purposes of res judicata." *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 192, 531 P2d 266 (1975). Those purposes have equal significance in this administrative setting and they would not be advanced by allowing a second administrative litigation for relief obtainable in the first as a means of avoiding the consequences of a statutory limitation. Nor are there any countervailing reasons in this administrative setting for the suspension of the operation of res judicata as a bar to subsequent litigation. We hold that res judicata bars this subsequent proceeding between these same parties where all that is sought is an additional remedy for the same unfair labor practice.

The equity operating in petitioners' favor is that, as far as this record shows, the respondent is withholding funds that it owes to Evans and Rackley and the failure to have sought a more completely remedial

order in the first proceeding alters neither their apparent legal entitlement nor the wrongfulness of respondent's withholding. We hold only that a second proceeding is barred; we do not pass on the propriety of reopening the first order, *see* K. Davis, Administrative Law Treatise, 605, § 18.09 (1958), or any other civil remedy.

## THE MERITS

That leaves in issue for resolution on the merits only the lawfulness of the withholding from petitioner Evans of payments-in-lieu-of-dues in May and June, 1976.

■ On February 4, 1976, in a separate vote, a majority of the bargaining unit voted in favor of the fair share provision of the 1975-76 collective bargaining agreement. That expression of majority approval was sufficient to satisfy the ratification requirements of ORS 243.650(10) *see* n 1, at least as to fair share payments withheld subsequent to the vote.[9] *See, Oregon City Fed. of Teachers v. PERB, supra.*

The statutory condition having been satisfied, the validity of the disputed fair share assessments depends upon whether the ratification requirements of the collective bargaining agreement were satisfied. That clause of the agreement provides:

> "The Association will show the Employer evidence that a majority of teachers in the bargaining unit voted for Fair Share prior to October 1, 1975."

If, as petitioner contends, this provision required separate approval of fair share, then ratification was not timely and the Association was not entitled to receive payments-in-lieu-of-dues. However, if the provision only required majority approval of the entire

---

[9]Because the complaint was not timely as to fair share monies withheld prior to the February 4, 1976, vote, we need not consider whether, under ORS 243.650(10), a fair share ratification vote can be given retroactive effect.

collective bargaining agreement and did not contemplate a separate vote on fair share, then this requirement was satisfied when the Association presented the district with evidence of the bargaining unit's June, 1975, ratification vote.

■ ■■ The meaning of the ratification provision is a question of contract law which turns upon the intent of the parties to the agreement. *See, OCE Fed. of Teachers v. ERB,* 29 Or App 39, 562 P2d 552, *rev den* (1977). Undisputed evidence in this case indicates that the parties to the agreement intended that blanket approval of the agreement would satisfy the fair share ratification requirement. That contractual assumption was reasonable prior to our decision in *Oregon City Fed. of Teach. v. PERB,* which held that separate majority approval of a fair share provision was statutorily required. Thus, ERB correctly concluded that the parties did not intend that the agreement require separate approval of fair share prior to October 1, 1975. The separate vote of February 4, 1976, was sufficient to authorize fair share withholding thereafter and therefore petitioners' 1975-76 claim was properly dismissed.[10]

## CONCLUSION

The complaint as to 1974-75 was barred; the complaint as to 1975-76 was faulty in part for lack of standing and wrong as to the remainder of the claim. Thus the dismissal by ERB was correct.

Affirmed.

---

[10] ERB's order in this case merely stated that its prior decision in the unfair labor practice complaint of the school district against the Association, which raised the same issues as petitioners' complaint, was controlling and dispositive of petitioners' 1975-76 claim. Petitioners argue that ERB's reliance upon its prior decision denied them due process because it gave res judicata effect to a prior decision to which petitioners were not parties. This is untrue. ERB gave its prior decision the effect of *stare decisis* in the same way that courts give precedential effect to prior decisions. Petitioners were not precluded from presenting any evidence or from arguing their position.