## KITE RANCHES, INC. et al,
*Appellants,*

*v.*

## SHIPSEY et al,
*Respondents.*

(79-576E; CA 18358)

632 P2d 1355

William M. Ganong, Jr., Klamath Falls, argued the cause for appellants. With him on the briefs was Wm. Ganong, Sr., Klamath Falls.

Robert S. Hamilton, Klamath Falls, filed the brief for respondents Edward Shipsey and Theodore Thomas. Robert D. Boivin, Klamath Falls, joined in the brief by Stipulation filed March 10, 1981, for respondents Klamath County, Klamath County Board of Commissioners, Klamath County Planning Commission and Planning Director.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

Plaintiffs appeal from a judgment entered in favor of defendants in this action for declaratory and injunctive relief. Plaintiffs seek a declaration that the doctrine of *res judicata* precludes the County Commission from reconsidering, after invalidation by the Land Conservation and Development Commission (LCDC), two county ordinances, one granting a comprehensive plan change and the other a zone change, which would permit a subdivision development opposed by plaintiffs. We affirm.

Defendants Shipsey and Thomas own 360 acres of land in Klamath County separated by a road from a 500-acre ranch owned and operated by plaintiffs. In October, 1977, those defendants (applicants) applied to the County's Planning Commission for (1) a comprehensive land use plan change from forestry to recreational-residential use on the western 80 acres of their land, and (2) a zone change from F (forestry) to SP-1 (rural residential) on the entire 360 acres. Those changes are, apparently, prerequisites to applicants' plan to develop a subdivision consisting of single family residences on five-acre lots. The requested changes were approved on July 18, 1978, by the Planning Commission, and on September 21, 1978, by the Board of County Commissioners.

Thereafter, plaintiffs petitioned for review before LCDC. In an order dated February 23, 1979, LCDC reversed, because it found the plan and zone changes violated statewide planning goals in the following respects: (1) both the plan and zone changes violated Goal 3 (agricultural lands), in that the County failed to make a specific finding that the soil capabilities of the subject tract were not predominantly in Classes I - IV, and the soil classes could not be determined from the evidence in the record; (2) the plan change violated Goal 4 (forest lands), because there was neither a specific finding, nor sufficient evidence to make a finding, that the 80 acres requested to be redesignated recreational-residential were not forest land; (3) both the zone and plan changes violated Goal 11 (public facilities and services), because the evidence raised an issue of police protection which was not addressed in the findings, and (4) both changes violated Goal 14 (urbanization),

because neither the record nor the findings addressed the need to urbanize the land in order to accommodate long-range population growth requirements.

Applicants did not seek judicial review of LCDC's determination. Instead, in April, 1979, they submitted a re-application for the same plan and zone changes, whereupon plaintiffs filed this action in the circuit court against applicants, the Board of County Commissioners and its members, the Planning Commission and its members, and the Planning Director of the County. Plaintiffs seek a declaration that (1) defendants are bound by LCDC's final order as "res adjudicata"; (2) the County defendants are without jurisdiction to consider the re-application, and (3) applicants are estopped from seeking reconsideration of any matter which was, or could have been, adjudicated in the LCDC proceeding. Plaintiffs also sought to enjoin the Planning Commission and its members from holding the initial hearing set for June 26, 1979, and to enjoin all defendants from all future prosecutions and hearings on the subject dealt with in the LCDC order. After this action was commenced, the Planning Commission postponed the hearing date pending the outcome of this litigation.

The trial court ruled that because the function of LCDC was unique and "begged for flexibility," and in the absence of legislative directive, the doctrine of *res judicata* should not be applied to LCDC determinations. Plaintiffs may be correct in stating that the trial court's ruling is stated too broadly, but the result is correct.

Plaintiffs argue fervently that the doctrine of *res judicata* is applicable to administrative proceedings. Within limits, that is true and need not be belabored. In *Oregon City Fed. of Teachers v. OCEA,* 36 Or App 27, 35-6, 584 P2d 303 (1978), we said:

> "The judicial rules of res judicata are not transferable in every respect to administrative procedure. Generally, they are applicable where prompt, orderly problem resolution is desirable, but not where the procedure or subject matter by their nature suggest a need for greater flexibility. * * *
>
> "* * * * *

"The prevention of harassment by successive legal proceedings and the promotion of economy of the resources of the adjudicative system have been characterized as the 'principle purposes of res judicata.' *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 192, 531 P2d 266 (1975). Those purposes have equal significance in this administrative setting and they would not be advanced by allowing a second administrative litigation for relief obtainable in the first as a means of avoiding the consequences of a statutory limitation. Nor are there any countervailing reasons in this administrative setting for the suspension of the operation of res judicata as a bar to subsequent litigation. * * *"

We see little, if any, analogy between the clearly quasi-judicial proceeding involved in that case (hearing on unfair labor practice complaint) and local land use decisions, which have mixed attributes: administrative, legislative and quasi-judicial, overlaid with local political considerations and statewide concerns expressed in the statewide planning goals. We need not decide here which of those attributes predominates in order to pigeon-hole the character of the proceedings at the county level; the contention is not that the County's determination is *res judicata,* but that LCDC's order became *res judicata* when no judicial review thereof was sought.

In order to determine whether, and to what extent, the doctrine of *res judicata* should be applied to LCDC determinations, it is necessary to consider that agency's relationship to local agencies in connection with its function of reviewing local land use decisions (former ORS 197.300) prior to the creation of the Land Use Board of Appeals. Or Laws 1979, ch 772. Clues to that relationship are found in the legislative findings set forth in the legislation establishing LCDC, particularly in subsections (3) and (4) of ORS 197.005, which state:

"(3) Except as otherwise provided in subsection (4) of this section, cities and counties should remain as the agencies to consider, promote and manage the local aspects of land conservation and development for the best interests of the people within their jurisdictions.

"(4) The promotion of coordinated statewide land conservation and development requires the creation of a statewide planning agency to prescribe planning goals and objectives to be applied by state agencies, cities, counties and special districts throughout the state."

Stated generally, LCDC's role was, and is, that of an overseer of local land use decisions and planning. Its function, prior to the adoption, and acknowledgment by LCDC, of a comprehensive plan, was to assure that local decisions properly consider and apply the statewide planning goals adopted by LCDC. If they did not, the local body was so advised on review by LCDC, and its decisions reversed. The effect of the LCDC determination must depend on what was decided. Here, the decision was that the local body had not considered adequately certain statewide planning goals and did not address them in its findings, and that compliance with those goals could not be determined from the record.

Assuming that if the same record were presented again to LCDC for review by the same parties raising the same issues, LCDC might appropriately apply the doctrine of *res judicata,* that question is not presented by this proceeding, which is in a peculiar posture. Plaintiffs brought this action[1] before the re-application had proceeded to a hearing before the County Planning Commission, when a new record may be made, and therefore prior to consideration by the Board of County Commissioners and review by LCDC or LUBA (Or Laws 1979, ch 772). Unlike the situation in *Oregon City Fed. of Teachers, supra,* where the issue was whether a second administrative proceeding before the same agency was barred, this controversy has not actually reached LCDC a second time. What the plaintiffs want us to decide is that the doctrine in its broad form, which precludes litigating not only those issues which were raised in a prior proceeding, but also those issues which could have been raised, is applicable after an LCDC determination of invalidity to prevent a local government from reconsidering applications for comprehensive plan and zoning amendments. We hold that it does not, and that it would not be appropriate to apply the doctrine in that manner.

That counties have the opportunity to improve the record and resuscitate land use ordinances declared invalid by LCDC was suggested in *Bd of Comm of Clackamas*

---

[1] No one contends that this proceeding may not be maintained, and we do not consider the question.

*County v. LCDC,* 35 Or App 725, 582 P2d 59 (1978). In that case we held that LCDC's statutory authority allowed it only to declare the validity or invalidity of an order made by a local government, but not to remand the matter or to require findings to be made. We said:

"As we view it, then the language of LCDC's order directing the county to take a particular action, i.e., to make specific findings, is too broad. What is intended, apparently, by the LCDC order is a declaration that, on the present state of the record, the ordinance is not valid because there is no evidence to show the ordinance complies with the statewide land use planning goals. *The LCDC's language concerning 'remand' and 'findings of fact' could, differently couched, become a recommendation to the county as to how it might most expeditiously improve the record and save the ordinance.*" (Emphasis supplied.) 35 Or App at 732.

In *Fish and Wildlife Department v. LCDC,* 288 Or 203, 603 P2d 1371 (1979), the question was whether LCDC *could* apply the rule requiring exhaustion of administrative remedies before it reviewed a local land use decision. The court held that the statutes did not authorize the application of that rule; it went on to say:

"In addition, there is another reason why the concept of exhaustion is not appropriate to the present proceeding. LCDC is not in the position of an appellate court whose primary duty is deciding competing interests of litigants but, rather, it is an agency of government charged with monitoring land use decisions of other governmental bodies to make sure established standards are met. It is, therefore, inappropriate, in the absence of statutory direction, that an exercise of this function should be determined by the failure of an interested party to take a procedural step, such as processing an appeal." 288 Or at 212-13.

That observation, although not directly in point, is appropriate here.

In this case, the County had previously passed an ordinance[2] which allowed re-application for a zone change

---

[2]  "Limitation - No request for a zone change shall be considered by the Planning Commission on the same property or substantially the same property within a one(1) year period immediately following a previous denial of such request except the Planning Commission may consent to a new hearing if in the opinion of the Planning Commission, new evidence or a change of circumstances warrant it."

after one year from the date the previous request was denied by the Planning Commission, absent changed circumstances warranting earlier reconsideration. We are of the opinion that rules governing re-application for, and reconsideration of, comprehensive plan and zone changes, and the interpretation of those rules, are "local aspects of land conservation and development" (ORS 197.005) which the legislature left to the cities and counties by not expressly providing otherwise.

In addition, ORS 197.275(1) provides:

"(1) Comprehensive plans and zoning, subdivision, and other ordinances and regulations adopted prior to October 5, 1973, shall remain in effect until revised under ORS 197.005 to 197.430 and 469.350. *It is intended that existing planning efforts and activities shall continue and that such efforts be utilized in achieving the purposes of ORS 197.005 to 197.430 and 469.350.*" (Emphasis supplied.)

That provision suggests that local governments should be free to address (and re-address) land use questions so as to be able to continue their ongoing planning activities in achieving the goal of the coordinated use of land. Furthermore, ORS 197.010(5)[3] provides that comprehensive plans must be regularly reviewed and, if necessary, revised to keep them consistent with the changing needs and desires of the public they are designed to serve. That objective could be frustrated by imposition of a rule that parties have but one chance to seek changes in comprehensive plans. Further, the rule urged upon us as applied to zone changes would tend to lock the real property into a fixed zone.

Although plaintiffs deny that any broad issues of policy are at stake here, they advert to the declaration by

---

[3] ORS 197.010(5) provides:

"The Legislative Assembly declares that, in order to assure the highest possible level of liveability in Oregon, it is necessary to provide for properly prepared and coordinated comprehensive plans for cities and counties, regional areas and the state as a whole. These comprehensive plans:

"* * * * *

"(5) Shall be regularly reviewed and, if necessary, revised to keep them consistent with the changing needs and desires of the public they are designed to serve."

the 1979 legislature that "time is of the essence in reaching final decisions in matters involving land use," 1979 Or Laws, ch 772, § 1(a), and to dicta from *Emerson v. Deschutes Cty Bd of Comm'rs,* 46 Or App 247, 250, 610 P2d 1259 (1980) (60-day limit applicable to filing a writ of review applied by analogy to filing action for a writ of mandamus seeking review of a land use decision), to the effect that participants in land use disputes must be able to rely on the finality of land use decisions. Those policies, while significant in other contexts, are not strong arguments for the rule plaintiffs would have us adopt, and they must give way before the legislature's deference to local control of land use matters and the recognition of the need for on-going planning activities and flexible revision of comprehensive plans.

All of the goal violations found by LCDC appear to be potentially correctable, involving as they do, the lack or insufficiency of evidence and findings on certain points. It would be beyond the authority of LCDC to preclude the local body from supplementing the record and properly addressing the problems found by LCDC and, perhaps, surmounting them. The trial court properly entered judgment for defendants.

Affirmed.