Argued and submitted October 7, 1983, reversed and remanded with instructions
March 28, 1984

## COATS,
*Appellant,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Respondents.*

(127742; CA A26739)

679 P2d 898

Frank M. Parisi, Portland, argued the cause for appellant. With him on the briefs was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for respondents Land Conservation and Development Commission and Department of Land Conservation and Development. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Deputy Solicitor General, and Mary J. Deits, Assistant Attorney General, Salem.

Richard L. Isham, Deschutes County Legal Counsel, Bend, argued the cause and filed the brief for respndent Deschutes County.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Appellant appeals from a judgment of the Circuit Court that affirmed an order of the Land Conservation and Development Commission (LCDC), acknowledging Deschutes County's comprehensive plan and implementing ordinance.[1] The central issue is whether the plan and ordinance satisfy Goal 5 with respect to mineral and aggregate resources. Goal 5 (OAR 660-15-000) in pertinent part provides:

"Goal: To conserve open spaces and protect natural and scenic resources.

"Programs shall be provided that will: (1) insure open space, (2) protect scenic and historic areas and natural resources for future generations, and (3) promote healthy and visually attractive environments in harmony with the natural landscape character. The location, quality and quantity of the following resources shall be inventoried:

"* * * * *

"b.   Mineral and aggregate resources;

"* * * * *

"Where no conflicting uses for such resources have been identified, such resources shall be managed so as to preserve their original character. Where conflicting uses have been identified, the economic, social, environmental and energy consequences of the conflicting uses shall be determined and programs developed to achieve the goal.

"* * * * *"

In November, 1979, Deschutes County adopted a comprehensive plan and implementing ordinance and submitted them to LCDC for acknowledgement. In March, 1980, a staff report of the Department of Land Conservation and Development (DLCD) discussed the plan's deficiencies with respect to mineral and aggregate resources:

"The standards for mine operation, site design and setbacks apply to both existing adjacent uses and *potential* uses.

---

[1] This proceeding predates 1981 legislation that provides for review of LCDC acknowledgement orders by this court. ORS 197.650(1) (Or Laws 1981, ch 748, § 10). The acknowledgement order was appealed to the circuit court pursuant to ORS 183.484(1). *See Oregon Business Planning Council v. LCDC,* 290 Or 741, 626 P2d 350 (1981).

These standards are legitimate to resolve conflicts with *existing* adjacent uses in order that the resource still can be utilized. However, Goal 5 requires the preservation of existing resources where no conflicts presently exist. The Department believes that where there are no *present* conflicts, limitations on land uses, setbacks, etc., should be applied *to proposed adjacent uses (i.e. residential) in order to avoid creating new conflicts and to permit the maximum preservation and use of the mineral and aggregate resource."* (Emphasis in original).

In April, 1980, LCDC rejected the plan, citing among other deficiencies, failure to comply with Goal 5.

In September, 1980, the county amended the plan and ordinance and again requested acknowledgement. While acknowledgement was pending before LCDC, appellant filed a petition for review with the Land Use Board of Appeals (LUBA), contending, *inter alia,* that the plan and ordinance violated Goal 5, because they failed to preserve the mineral and aggregate resources within the county, some of which appellant owned and intended to extract and process. Ultimately, LUBA recommended that the plan and ordinance be remanded to the county, *Coats v. Deschutes County,* 3 Or LUBA 69 (1981), because of a significant deficiency, summarized by LUBA:

"* * * We * * * conclude that the county's plan and zoning ordinances violate Goal 5 in that they fail to set forth a balancing process whereby uses which may conflict with future utilization or preservation of mineral or aggregate resources will be balanced against the present or future need for those resources." 3 LUBA at 74.

■      LUBA specifically found that the plan and ordinance did not comply with Goal 5 because:

"[The plan and ordinance] do not require that future conflicting uses be analyzed to determine the economic, social, energy or environmental consequences of allowing the uses *before* they may be allowed. Nor is there any process in Deschutes County's plan policies or implementing ordinance by which the county, once those consequences have been identified, decides whether the use should be allowed and if so, under what, if any, conditions. The only authority which the county has is to vary the setback requirements for development on lots created after the effective date of the plan and ordinance. If someone wants to put a house on a pre-existing lot adjacent to a resource site and within the minimum

setback requirements of the applicable zone, not only is the house automatically permitted but the county has no authority to restrict placement of the house so as to avoid or lessen the potential adverse impact of the house on the adjacent resource site. In addition the county has no authority to require development of screening or other barriers on the lot to mitigate potential adverse consequences from development of the resource site.

"The conflict levels established by the county do not achieve the purpose of Goal 5 because the emphasis here is on restricting operation of the resource site rather than evaluating proposed conflicting uses for their adverse impact on the resource. Within each of these conflict levels, uses on land adjacent to resource sites may be allowed without any consideration of the consequences of the use or uses against the need to protect the resource. Failure to provide for consideration of the consequences of the conflicting use or uses is inconsistent with Goal 5.

"For the foregoing reasons, Deschutes County's comprehensive plan and implementing ordinance must be remanded to the county for further proceedings consistent with this opinion." 3 Or LUBA at 76-77. (Emphasis in original.) (Footnote omitted.)

On April 30, 1981, LCDC adopted LUBA's proposed opinion and order.[2] In order to comply with the proposed opinion, and before LCDC's action on it, Deschutes County had amended PL-15 § 5.250 by deleting the language in brackets.

"Lots or parcels [transferred or created after the effective date of this amendment] which abut an SM or SMR zone may be required to establish setbacks in excess of those required in the zone in which the lot or parcel is located. The total setback to be established will be determined by the planning director after meeting with the applicant; in any case the setback shall not exceed 100 yards. The purpose of this additional setback is to provide sight and sound screening from the adjoining mining operation." Deschutes Co. Ord. No. 81-015.

The amendment extended the county's regulation to lots preexisting the enactment of the amendment. Following the amendment, DLCD staff recommended acknowledgement of the plan. In response to appellant's objections, LCDC adopted the staff's recommendation and found:

---

[2] LCDC's action was later memorialized in an order dated May 5, 1981.

"The county's plan adequately discusses the conflicts between surface mining and existing and potential development consistent with the commission's findings in the LUBA case. In addition, the county has developed a program which allows a resource to be used while protecting the interests of adjacent landowners. Since the commission's decision on this case and the release of LUBA's revised opinion and order, Deschutes County has amended its zoning ordinance in order to restrict development on *all* lots adjacent to existing and potential mine sites." (Emphasis in original.)

LCDC then acknowledged the plan and ordinance, also on April 30, 1981.[3] On May 11, 1981, LCDC issued the acknowledgement order, which is the subject of this appeal.[4]

■ ORS 183.484(4)(b)(B) requires a court to remand an agency order that is "* * * [i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency * * *" LUBA's opinion construing Goal 5 became an "officially stated agency position" when it was adopted by LCDC. The issue is whether the amendment of the zoning ordinance cures the Goal 5 deficiencies identified by the LUBA opinion and DLCD staff recommendation and, if not, whether LCDC adequately explained the change in its position.

In construing Goal 5, LCDC reasoned that "where there are no present conflicts, limitation on land uses, setbacks, etc., should be applied to proposed adjacent uses * * * in order to avoid creating new conflicts * * *." LUBA's proposed opinion said the plan did not comply with Goal 5 because it does not "require that future conflicting uses be analyzed to determine the economic, social, energy or environmental consequences of allowing the uses *before* they may be allowed"

---

[3] On April 30, 1981, LCDC first adopted LUBA's recommendation to remand the plan and ordinance to the county. On the same day, LCDC proceeded to accept the amended ordinance as satisfying defects found by LUBA and acknowledged the plan and ordinance.

[4] Appellant contends, on the basis of LCDC's approval of the LUBA opinion, that the doctrine of res judicata and collateral estoppel bar a reexamination of Goal 5 issues by LCDC. *See Roth v. LCDC,* 57 Or App 611, 618, 646 P2d 85 (1982); *Kite Ranches v. Shipsey,* 53 Or App 833, 841, 632 P2d 1355 (1981). Although res judicata may be applicable to agency actions, it does not apply here, because there is no identity of issue. LUBA based its opinion on the county ordinance before its amendment. The amended ordinance addressed deficiencies found by LUBA. LCDC's acknowledgement was on the basis of the amended ordinance. *See* n 3, *supra.*

and that once such a determination has been made there is no process for determining "whether the use should be allowed, and if so, under what, if any, conditions." *Coats v. Deschutes County, supra,* 3 Or LUBA at 76. (Emphasis in original.)

Appellant argues that the plan and ordinance must contain a "conflict resolution program." He contends that the amended ordinance does not meet such a requirement, because it automatically allows a conflicting use and merely authorizes the planning director to attempt to mitigate the resulting conflict by increasing the setback. LCDC and Deschutes County agree that Goal 5 requires a conflict resolution program, but they argue that the amended ordinance fulfills this requirement by authorizing the planning director to increase the setback on existing and future lots adjacent to mining zones.

■ We agree with appellant that the amended ordinance fails to cure the deficiencies in the plan identified by LUBA and adopted by LCDC. First, there is no requirement that the economic, social, environmental and energy consequences (called in land use jargon "ESEE") of potential conflicting uses be considered *before* they are allowed. Second, the plan and ordinance do not provide a process for determining *whether* the use should be allowed and, if so, under what, if any, conditions. Further, LCDC, in adopting the staff report that recommended acknowledgement, did not explain the inconsistency between the interpretation of Goal 5 in the adopted LUBA opinion and its decision to acknowledge.

■ We also note that after the plan was approved by LCDC on April 30, 1981, and before the acknowledgement order on May 11, 1981, LCDC adopted OAR 660-160-10, which provides:

> "Based on the determination of the economic, social, environmental and energy consequences a jurisdiction must 'develop a program to achieve the Goal.' Assuming there is adequate information on the location, quality and quantity of the resource site as well as the nature of the conflicting use and ESEE consequences, a jurisidiction is expected to 'resolve' conflicts with specific sites in any of the following three ways listed below. * * *' "

The three ways to "resolve conflicts" with specific sites are: (1) to protect the resource site, (2) to allow conflicting uses

fully and (3) to limit conflicting uses. Each of the three methods of resolution require an analysis of ESEE consequences, and reasons which support each decision must be presented in the comprehensive plan. The administrative rule addresses the same concerns as the adopted LUBA opinion and the requirements of the rule are consistent with LUBA's interpretation of Goal 5.[5]

Reversed and remanded to the circuit court with instructions to remand to LCDC.

---

[5] OAR 660-16-025(3) provides:

"Jurisdictions which receive acknowledgement of compliance (as outlined in ORS 197.251) at the April 30/May 1, 1981 Commission meeting will not be subject to review procedures outlined above, but will be treated as other previously acknowledged jurisdictions."

This provision is apparently intended to exclude the Deschutes County Comprehensive Plan from the requirements of OAR 660-16-10. We need not determine whether subsection 3 successfully excludes the Deschutes County plan from compliance, because we find the rule consistent with the policies enunciated by LUBA and adopted by LCDC in interpreting Goal 5. *See Marion County v. Federation for Sound Planning,* 64 Or App 226, 668 P2d 406 (1983).