Argued and submitted August 12, affirmed October 16, reconsideration denied December 13, 1985, petition for review denied April 1, 1986 (300 Or 704)

# LA PINE PUMICE CO.,
*Petitioner,*

*v.*

# DESCHUTES COUNTY BOARD
# OF COMMISSIONERS,
*Respondent.*

(85-017/85-018; CA A36543)

707 P2d 1263

Allen L. Johnson, Eugene, argued the cause for petitioner.

With him on the brief was Sullivan, Josselson, Roberts, Johnson and Kloos, Eugene. Myer Avedovech II, and Babb & Avedovech, Bend, are associated as co-counsel.

No appearance for respondent Deschutes County Board of Commissioners.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of LUBA's order upholding two ordinances of Deschutes County which amended, respectively, the county's comprehensive plan and its zoning ordinance to establish regulations for the use of geothermal resources.

Petitioner is the owner of a 157-acre tract in the Newberry Crater area. The property is located above a volcanic chamber and fault zone, and it has been identified by the county as a very likely site of geothermal energy resources. The county's ordinances create a conditional use procedure for geothermal production in some areas and for geothermal exploration in certain other areas. However, the ordinances prohibit both production and exploration on petitioner's property, because the county concluded that other uses in the area, *e.g.,* wildlife habitat and recreational uses, are in conflict with and should be fully protected against the consequences of geothermal uses. Both geothermal energy uses and the conflicting uses that the county seeks to protect are subject to Goal 5 and to LCDC's implementing rule, OAR 660-16-000 *et seq.*

Petitioner assigns six errors. We conclude that only the first and second warrant discussion. Those assignments raise the questions of whether the county's prohibition of exploration for geothermal resources on petitioner's property is consistent with the goal and the rule.

Goal 5 provides, in pertinent part:

"GOAL: To conserve open space and protect natural and scenic resources.

"Programs shall be provided that will: (1) insure open space, (2) protect scenic and historic areas and natural resources for future generations, and (3) promote healthy and visually attractive environments in harmony with the natural landscape character. The location, quality and quantity of [specified] resources shall be inventoried * * *.

"* * * * *

"Where no conflicting uses for such resources have been identified, such resources shall be managed so as to preserve their original character. Where conflicting uses have been identified the economic, social, environmental and energy

[ESEE] consequences of the conflicting uses shall be determined and programs developed to achieve the goal."

The following provisions of OAR 660-16-000 *et seq* are relevant to the issues we discuss or were perceived as relevant by petitioner or LUBA:[1]

"660-16-000 * * *."

"(2) A 'valid' inventory of a Goal 5 resource under subsection (5)(c) of this rule must include a determination of the location, quality, and quantity of each of the resource sites. Some Goal 5 resources (e.g., natural areas, historic sites, mineral and aggregate sites, scenic waterways) are more site-specific than others (e.g., groundwater, energy sources). For site-specific resources, determination of *location* must include a description or map of the boundaries of the resource site and of the impact area to be affected, if different. For non-site-specific resources, determination must be as specific as possible.

"* * * * *

"(5) Based on data collected, analyzed and refined by the local government, as outlined above, a jurisdiction has three basic options:

"* * * * *

"(b) Delay Goal 5 Process: When some information is available, indicating the possible existence of a resource site, but that information is not adequate to identify with particularity the location, quality and quantity of the resource site, the local government should only include the site on the comprehensive plan inventory as a special category. The local government must express its intent relative to the resource site through a plan policy to address that resource site and proceed through the Goal 5 process in the future. The plan should include a time-frame for this review. Special implementing measures are not appropriate or required for Goal 5 compliance purposes until adequate information is available to enable further review and adoption of such measures. The statement in the plan commits the local government to address the resource site through the Goal 5 process in the post-acknowledgement period. Such future actions could require a plan amendment.

"(c) Include on Plan Inventory: When information is

---

[1] The county failed to appear in this court, and the case was submitted on the record as to the county pursuant to ORAP 5.76.

available on location, quality and quantity, and the local government has determined a site to be significant or important as a result of the data collection and analysis process, the local government must include the site on its plan inventory and indicate the location, quality and quantity of the resources site (see above). Items included on this inventory must proceed through the remainder of the Goal 5 process."

"660-16-010 Based on the determination of the economic, social, environmental and energy consequences, a jurisdiction must 'develop a program to achieve the Goal'. Assuming there is adequate information on the location, quality, and quantity of the resource site as well as on the nature of the conflicting use and ESEE consequences, a jurisdiction is expected to 'resolve' conflicts with specific sites in any of the following three ways listed below. Compliance with Goal 5 shall also be based on the plan's overall ability to protect and conserve each Goal 5 resource. The issue of adequacy of the overall program adopted or of decisions made under sections (1), (2) and (3) of this rule may be raised by the Department or objectors, but final determination is made by the Commission, pursuant to usual procedures:

"(1) Protect the Resource Site: Based on the analysis of the ESEE consequences, a jurisdiction may determine that the resource site is of such importance, relative to the conflicting uses, and the ESEE consequences of allowing conflicting uses are so great that the resource site should be protected and all conflicting uses prohibited on the site and possibly within the impact area identified in OAR 660-16-000(5)(c). Reasons which support this decision must be presented in the comprehensive plan, and plan and zone designations must be consistent with this decision.

"(2) Allow Conflicting Uses Fully: * * *.

"(3) Limit Conflicting Uses: * * *." (Emphasis in original.)

Petitioner's basic contention is that, by precluding exploration for geothermal energy resources in the area of petitioner's property, the county has effectively prevented the adequate inventorying of the resource. Petitioner maintains that the county has made it impossible to apply Goal 5 correctly to geothermal resources in the area, because it has excluded the use of the resource in favor of other uses before there has been the complete inventory of the resource that is a necessary

precursor to the identification of its potential uses and conflicting uses and to the resolution of conflicts.[2]

LUBA concluded:

"We believe the county's inventory, including as it does both general areas of geothermal resources and identification of existing recreational uses and other uses in the area, is sufficient to meet the requirements in the goal and rule. While petitioner interprets the information in the record differently, the information is sufficient for the county to identify conflicts and to state the consequences of allowing various uses over others. * * *

"While we understand the county may, by refusing to allow exploration on petitioner's property, make it impossible to develop detailed knowledge of the value of the resource, we do not believe that potential is the issue under Goal 5. The issue is whether the inventories are sufficiently detailed so that the county can decide whether it wishes to allow one use over another. We believe that standard has been met * * *."

We agree with LUBA, but we think that more needs to be said. One of the objectives of Goal 5 is the creation of *ongoing* programs for resolving conflicts, as they arise, between protected resource uses and other uses. *See Coats v. LCDC,* 67 Or App 504, 679 P2d 898 (1984). OAR 660-16-010(1) permits the complete exclusion of conflicting uses, presumably including conflicting uses of other Goal 5 resources, from a resource site. It is either an unstated underlying premise or an unstated ramification of petitioner's arguments that no *absolute* exclusion of a resource-related use from a site is *ever* permissible under the goal, at least in connection with resources discovered after a plan has been acknowledged. The possibility of future discoveries of

_____

[2] As an adjunct to that principal point of its argument, petitioner contends that the prohibition of exploration prevents the site-specific inventory that OAR 660-16-000(2) requires. LUBA concluded that the site-specificity requirement of the rule does not apply to energy resources, which are "fugitive" by nature. Although we agree with LUBA, we think the site-specificity issue is a red herring. Everyone accepts the assumption that petitioner's property is a potential treasure chest of geothermal energy resources. The real question petitioner raises is whether the county has violated Goal 5 and the rule by its *a priori* exclusion of geothermal uses in an area, notwithstanding the area's recognized potential importance as a geothermal resource site. As we understand it, petitioner's point does not turn on inventorying factors, *i.e.,* location, quality and quantity; it turns on whether *all* uses of the energy resource can be prohibited in the area before the exploration that must precede the identification of possible uses has taken place.

resources is infinite, but acknowledgement must occur at a particular time. However, Goal 5 and OAR 660-16-010(1) *may* say inconsistent things about how future discoveries of resources are to be assimilated into a jurisdiction's land use scheme. *But see Coats v. LCDC, supra,* 67 Or App at 510-11. The goal *may* dictate that a conflict resolution mechanism be applied to each new potentially conflicting use as it becomes known. The rule *may* say the opposite with respect to the use of newly discovered resources on sites from which uses which conflict with other resources have been absolutely excluded; on the other hand, the rule *may* mean instead that an exclusion can apply only to known conflicting uses and that potential uses arising out of later-discovered resources must undergo separate ESEE analysis to determine whether they, too, should be excluded from the site.

Whatever the premise or ramification of petitioner's arguments may be, however, it is unnecessary here for us to interpret OAR 660-16-010(1) or to decide whether it is inconsistent with Goal 5. Petitioner is not concerned with a failure by the county to apply Goal 5 to a newly discovered resource; its concern is over the county's prohibition of explorations aimed at discovering the resource. We understand the county to have found that geothermal exploration in itself, aside from any productive use that might follow from a discovery, is a use which conflicts with the other Goal 5 resources that the county has chosen to protect in the area of petitioner's property.

Goal 5 does require identification of resources as well as resolution of conflicts between uses. Reduced to essentials, petitioner's argument is that the identification requirement of the goal means that planning jurisdictions must allow an eternal quest for Goal 5 resources that, if found, will necessarily be in conflict with other identified Goal 5 resources. That *reductio ad absurdum* may or may not be permitted by the language of Goal 5. However, all we need decide in this case is that we do not construe the goal as requiring that the county permit all *possible* measures to locate a Goal 5 resource when the exploratory measures themselves would be destructive to other Goal 5 resources that have already been identified.

Affirmed.