Argued and submitted July 15, reversed and remanded December 30, 1982

ROSS,
*Petitioner on review,*
*v.*
SPRINGFIELD SCHOOL DISTRICT No. 19,
*Respondent on review.*
(CA 19038, SC 28590)
657 P2d 188

Robert D. Durham, Eugene, argued the cause for petitioner on review. With him on the brief were Jennifer Friesen and Kulongoski, Heid, Durham & Drummonds, Eugene.

John C. Volmert, Springfield, argued the cause for respondent on review. With him on the brief were Merwin C. Logan and Wurtz, Logan & Logan, Springfield.

Oregon School Boards Association filed a brief amicus curiae.

ROBERTS, J.

Peterson, J. dissented and filed an opinion in which Campbell and Carson, JJ. join.

## ROBERTS, J.

The Board of the Springfield School District dismissed petitioner, a permanent teacher of 19 years' employment with the district, on grounds of inefficiency, immorality and gross unfitness. Petitioner appealed to the Fair Dismissal Appeals Board (FDAB) by means of the procedure established in ORS 342.905.

After a hearing the FDAB found the facts relied upon by the school board in its dismissal to be true and that such facts supported the statutory grounds of immorality and gross unfitness. The FDAB dismissed the charge of inefficiency finding that the evidence to support the charge was "less than a scintilla." The FDAB reviewed the school board's dismissal on the other two grounds for unreasonableness or arbitrariness and, finding none, affirmed the dismissal.

The Court of Appeals upheld the FDAB decision. 56 Or App 197, 641 P2d 600 (1982). It reasoned that under the dismissal statute the FDAB review function was limited. If the facts relied upon by the school board were true, the FDAB could reverse the school board decision only if the board acted unreasonably, arbitrarily or imposed a sanction which was clearly excessive. ORS 342.905(5). We review the decision of the FDAB pursuant to ORS 183.482(8).[1]

This appeal presents for our consideration the two interrelated issues of the authority delegated by the legislature to local school boards and the FDAB to interpret and apply the statutory grounds for dismissal of a permanent teacher set forth in ORS 342.865,[2] and the proper interpretation to be given these terms.

---

[1] ORS 183.482(8)(a) provides:

"The court may affirm reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law."

[2] ORS 342.865(1) provides:

"No permanent teacher shall be dismissed except for:

We begin with an overview of the Fair Dismissal Statutes. ORS 342.865 - 342.915 provide the method by which a permanent teacher, as defined in ORS 342.815(5),[3] may be dismissed. A recommendation for dismissal begins with the district superintendent. The statute specifies content and timeliness requirements the recommendation must meet in order to provide adequate notice to the teacher, the school board and the FDAB. The school board may then act on the recommendation. If it chooses to approve dismissal, the dismissal takes effect on the date of school board action or at a later date set by the board. Notice of the board's decision must be provided the teacher. Upon dismissal the teacher may appeal to the FDAB. In the event of appeal a three person panel of the FDAB holds a contested case hearing. The teacher is entitled to present any evidence relevant to the truth of the charges and the adequacy of the facts justifying the dismissal. Upon completion of the hearing the FDAB prepares a report of its findings and order which includes the panel's determination of the accuracy of the facts relied upon by the school

---

"(a) Inefficiency;

"(b) Immorality;

"(c) Insubordination;

"(d) Neglect of duty;

"(e) Physical or mental incapacity;

"(f) Conviction of a felony or of a crime involving moral turpitude;

"(g) Inadequate performance;

"(h) Failure to comply with such reasonable requirements as the board may prescribe to show normal improvement and evidence of professional training and growth; or

"(i) Any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate."

ORS 342.175(1) lists the following ground for revocation of a teaching certificate:

"* * * * *

"(c) Any gross unfitness; * * *"

[3] ORS 342.815(5) provides:

" 'Permanent teacher' means any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive school years and who has been reelected by the district after the completion of such three-year period for the next succeeding school year."

board, incorporation of additional facts developed at the hearing, consideration of school board policies and standards of performance and, where the panel seeks to reverse the dismissal, specific reasons supporting its determination that the school board's action was arbitrary, unreasonable or a clearly excessive remedy. Either the school board or the teacher may seek judicial review of the FDAB decision.

The statutes under which the school boards and the FDAB operate define the roles of the agencies. ORS 342.895(1) provides: "Authority to dismiss a permanent teacher is vested in the district school board subject to the provisions of the fair dismissal procedures of ORS 342.805 to 342.955 and only after recommendation of the dismissal is given to the district school board by the superintendent." The procedure to which the school board's authority is subject is the FDAB appeal process. The authority of the FDAB on appeal is set forth in ORS 342.905(5). That statute in relevant part provides:

> "When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written report and send it to the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. [The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. The panel shall not reverse the dismissal if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy.] * * *" (Brackets added to indicate 1979 amendments discussed *infra.)*

No hearing is required at the school board level. The contested case hearing conducted by the FDAB

presents a dismissed teacher with the first opportunity to rebut the facts and charges brought by the district superintendent and approved by the school board. One of the FDAB's "review" functions is that of primary fact-finder. If the FDAB finds the allegations untrue or unsubstantiated, the teacher must be reinstated. ORS 342.905(6)(a).[4]

The issue presented by this case is the scope of the FDAB review function in the event the panel finds the facts true and substantiated. Petitioner contends that in this regard the statute lodges with the FDAB responsibility to interpret and apply the statutory grounds for dismissal set forth in ORS 342.865(1). Respondent school district asserts that such power was delegated to local school boards, subject to review by the FDAB only for factual accuracy and unreasonable, arbitrary, or excessive school board action.

Respondents rely on the 1979 amendment to ORS 342.905(5), in brackets, *supra.* They read the "unreasonable, arbitrary or clearly an excessive remedy" language as a limitation on FDAB power both to reverse a dismissal sanction *and* to determine whether petitioner's conduct constitutes the grounds cited. Under this analysis school boards, not the FDAB, are empowered to apply the statutory terms to particular facts and the FDAB cannot reach a contrary interpretation of the standards without first finding the school board interpretation arbitrary, unreasonable or excessive.

■ ■ ˙We do not find the amendment so all encompassing. Both before and after the amendment the FDAB remains the agency responsible for interpreting the statute. The unchanged statutory mandate that the FDAB consider whether the "facts * * * are adequate to justify the

---

[4] ORS 342.905(6)(a) provides:

"Subject to subsection (5) of this section and paragraphs (b) and (c) of this subsection, if the Fair Dismissal Appeals Board panel finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal, and so notifies the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, the teacher shall be reinstated and the teacher shall receive the salary for the period between the effective date of the dismissal and the date of the order reinstating the teacher."

statutory grounds cited" compels this conclusion.[5] The amendment serves to clarify that while the FDAB interprets the statute, this interpretive authority does not permit the FDAB to assess the propriety of the sanction imposed by the school board beyond determining if it is arbitrary, unreasonable or excessive. Where the FDAB finds both that the facts surrounding the teacher's conduct are true and substantiated, and that the facts adequately justify the statutory grounds cited, the school board decision on the dismissal sanction, unless arbitrary, unreasonable or excessive, must stand.

We find little support in the history of the legislation for a contrary interpretation. It is apparent that the decision in *Lincoln County School District v. Mayer,* 39 Or App 99, 591 P2d 755 *rev den* 287 Or 215 (1979), relied on by the Court of Appeals in this case, provided the impetus during the 1979 legislative session for a reevaluation of the role of the FDAB relative to the school board in dismissal appeals. *Mayer* reinstated the Lincoln County school board's decision to dismiss a permanent teacher on the grounds of inefficiency, insubordination, neglect of duty and inadequate performance. The FDAB had reversed the dismissal. Though finding the facts charged to be true and indicating that the facts justified the grounds for dismissal the FDAB disagreed with the school board that the teacher should be dismissed. *Mayer* interpreted the Fair Dismissal statutes to mean that the FDAB is empowered to conduct a *"de novo"* review of the facts but, so long as the facts justify the grounds cited for dismissal, that agency may engage in only deferential review of the school board's judgment concerning the dismissal sanction. "[I]t is not for FDAB to determine whether it would dismiss the teacher, but whether there is some evidence to justify the 'grounds cited as reasons,' not the dismissal itself." 39 Or App at 106.

---

[5] Former ORS 342.905(5) provided in relevant part:

"* * * The report [of the FDAB] shall contain in its finding as to whether or not the facts relied on to support the recommendations of the district superintendent are true and substantiated and if true and substantiated, whether or not they are adequate to justify the statutory grounds cited as reasons for the dismissal."

FDAB consideration of nonarbitrary school board policies and the limitation in FDAB power to reverse a dismissal sanction were the substantive changes in 1979.

There can be no question that the legislators were apprised of the *Mayer* decision. Many of the committee debates centered upon its impact on the review function of the FDAB. Hearings on Senate Bill 446 before the Senate Committee on Education, May 15, 22, June 4, 12, 1979; and before the House Committee on Education June 23, 27, 28, 1979. We do not read the legislative history or the amendment that resulted as other than a codification of the *Mayer* decision. We agree with the observation of the Court of Appeals that with regard to the sanction "the amended statute makes clearer than did the statute in effect at the time of *Mayer* that the FDAB may not substitute its judgment for that of the school board. * * *" 56 Or App at 203. Nonetheless, the FDAB's duty independently to interpret the statutory grounds remains unchanged.

■ On review under ORS 342.905(5) the FDAB undertakes three inquiries: 1) whether the facts alleged are true and substantiated, 2) whether the facts are adequate to justify the statutory grounds cited, and 3) whether the sanction was arbitrary, unreasonable, or excessive.

In this case the material facts are not in dispute. Petitioner, a librarian at elementary schools in the Springfield school district, was present at the Adult World Bookstore in Eugene in January, 1979, during an undercover investigation of the book store by the Eugene police department. The book store sold sexually explicit material and displayed movies in an arcade. In an attempt to enjoin the book store as a nuisance, police engaged in surveillance activities and recorded the activities of customers, including petitioner, while at the arcade. Police observations were incorporated into a complaint and affidavit subsequently filed in Lane County against the book store. Petitioner was subpoenaed but never testified for the prosecution in the injunction case. The FDAB found that petitioner's conduct at the book store became known in the communities where he taught. Petitioner was charged with no crime.

On March 27, 1979, the Springfield district superintendent filed a complaint with the Teacher Standards and Practices Commission seeking revocation of petitioner's teaching certificate for gross unfitness "based upon

proceedings pending in Lane County Circuit Court." The Commission conducted a preliminary investigation as required by ORS 342.176,[6] and thereafter resolved "[t]hat after completing the preliminary investigation on the complaint * * * the Commission finds a lack of probable grounds for action against the teacher under ORS 342.175 - 342.177 and therefore dismisses the matter." Minutes, Teacher Standards and Practices Commission, May 17, 1979, at 13.

On January 14, 1980, the school board dismissed petitioner on grounds of inefficiency, immorality, and gross unfitness. The allegations submitted by the superintendent to the board in support of the dismissal may be summarized as follows: police observation of petitioner's conduct at the book store and the incorporation of these observations in an affidavit and complaint filed in the Adult World injunction case caused petitioner to become the subject of public notoriety. As a result his ability to perform the duties of a teacher, specifically to provide leadership by example, to promote high moral standards, to inspire confidence in students, and to maintain open communication with the students, parents and teachers of the school community, was impaired.

The issue before us is whether the FDAB correctly decided that the facts found as true adequately justified the statutory grounds of gross unfitness and immorality. Gross unfitness is not a ground for dismissal of a permanent teacher enumerated in ORS 342.865(1). It is incorporated by subsection (i) of that statute which provides: "No

---

[6] ORS 342.176 provides:

"Upon receipt of the complaint under ORS 342.175, the staff of the commission shall promptly undertake a preliminary investigation of the facts on which the complaint is based. The results of the preliminary investigation shall be reported to the commission at its next regular meeting following completion of the investigation. If the commission finds from the report that there is sufficient evidence to justify holding a hearing under ORS 342.177 on the grounds stated in ORS 342.175, it shall notify in writing the teacher or administrator against whom a complaint has been made, inclose a statement of the charges based on the complaint and preliminary investigation and set a date for a hearing. It shall also notify in writing the complainant and the employing district. If the commission finds that there is insufficient or no evidence to justify a hearing, the commission shall notify in writing the teacher or administrator, the complainant and the employing district of its finding."

permanent teacher shall be dismissed except for: * * * (i) Any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate." ORS 342.175(1)(c) includes as grounds for revocation "any gross unfitness."

■ The Teacher Standards and Practices Commission is charged with rulemaking and adjudicative powers in the revocation and suspension of teaching certificates. ORS 342.165-342.167, 342.177. It is the Commission which decides whether there is sufficient evidence to justify holding a hearing and whether the charge, if proven after hearing, warrants revocation of a teaching certificate. In short, the Commission is the agency with power to interpret the statutory grounds for revocation.

In this case the Commission determined that the facts underlying the charge of gross unfitness did not constitute grounds for revocation; in fact, they did not warrant proceeding to a hearing.

In its order the FDAB stated that it

"* * * gave very little weight to the Teacher Standards and Practices Commission dismissing the complaint against Ross for lack of probable cause. The complaint was brought by the school district based upon the conduct of Ross at the Adult World. Whether Ross is qualified to teach in the State of Oregon is determined by the Teachers Standards and Practices Commission and reviewed by the State Board of Education. Whether Ross is qualified and an acceptable teacher in the Springfield School District is determined by the Springfield School Board after recommendation by the Superintendent."

■ We note that the standard for FDAB is not "gross unfitness" but "any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate." If the Commission, with knowledge of the facts stated in the investigatory report, concluded that these did not give probable cause to proceed to a revocation hearing, this conclusion must represent the Commission's interpretation of the statute for which it has responsibility. Not only has the FDAB misconceived its own responsibility independently to apply the statutory term to the facts, it has, by adopting the school board's determination that

petitioner's conduct constituted gross unfitness, engaged in a more restrictive interpretation of that term than that rendered by the Commission. ORS 342.865(1)(i) does not confer on the school board or the FDAB independent authority to interpret the grounds for revocation of a teaching certificate. Where the Commission has determined that a particular set of facts does not constitute grounds for revocation neither the school board nor the FDAB may reach a different interpretation. Petitioner's dismissal on this ground is reversed.

The FDAB indicated that "[e]ither ground will support the dismissal action by the Board." We therefore address petitioner's remaining arguments as they relate to his dismissal for immorality.

■ Petitioner first asserts that prior rulemaking pursuant to the Administrative Procedures Act (ORS 183.310 *et seq)* is required under *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), before the FDAB may engage in adjudication in individual cases. We disagree. We do not read *Megdal* so broadly.

*Megdal* addressed terms of delegation.[7] It examined ORS 679.140, the statute which sets forth grounds for discipline of dentists. Because the statute specified that the grounds for discipline included but were not limited to the conduct enumerated by the legislation, we concluded that the State Board of Dental Examiners was authorized to expand by rules the statutory list of activities that could subject a dentist to license revocation.

In contrast, the FDAB's authority under the teacher dismissal standards in ORS 342.865(1) is interpretive rather than legislative. *See Megdal, supra,* 288 Or at

---

[7] *Springfield Education Association v. Springfield School District,* 290 Or 217, 621 P2d 547 (1980), divides statutory terms into three classes, each of which conveys to the agency a different range of responsibility for definition. The first class, terms of precise meaning, are those of common or technical parlance requiring little more than application to the facts of the case. The second class includes inexact terms which comprise a complete expression of legislative policy. The agency's function is one of interpretation within the meaning intended by the legislature. The third class, terms of "delegation," are forms of incomplete legislation which the agency is given authority to complete. The agency functions as more than mere interpreter; it may make rules within the range of discretion established by the statutory terms.

304, *Springfield Education Association v. Springfield School District,* 290 Or 217, 231-33, 621 P2d 547 (1980). The statute lists eight grounds for dismissal and incorporates the grounds upon which a teaching certificate may be revoked set forth in ORS 342.175. It begins "No permanent teacher shall be dismissed except for * * *." There is no authority delegated to the FDAB to legislate beyond the language of the statute. Further, *Megdal* was premised upon an interpretation of the intent of a particular statute which we resolved called for rulemaking prior to adjudication. No such statute is involved here. In this case the *Megdal* analysis has no application.

■     Under the Fair Dismissal statutes the school board exercises a limited function in the statutory standards for dismissal. Any rules, policies or standards of performance[8] adopted by the school board and applied in a nonarbitrary fashion must be given consideration by the FDAB. ORS 342.905(5), ORS 342.865(2).[9] It appears that the Springfield school board has not attempted to define immorality through rules, policies or standards in the present case.

The statute places primary interpretive responsibility with the FDAB. When applying terms of complete legislative expression, an agency may interpret statutory standards either by an interpretive rule or by order in a

---

[8] School boards are authorized to establish rules for the government of schools, ORS 332.107, and to adopt standards of performance for teachers, ORS 342.850(2)(b)(A).

ORS 332.107 provides:

"Each district school board may establish rules for the government of the schools and pupils consistent with the rules of the State Board of Education."

ORS 342.850(2)(b)(A) provides:

"(b) The district school board shall implement the evaluation process that includes:

"(A) The establishment of job descriptions and performance standards which include but are not limited to items included in the job description * * *."

[9] ORS 342.865(2) provides:

"In determining whether the professional performance of a permanent teacher is adequate, consideration shall be given to regular and special evaluation reports prepared in accordance with the policy of the employing school district and to any written standards of performance which shall have been adopted by the board."

contested case. *Springfield, supra,* 290 Or at 226. The FDAB has chosen to interpret immorality by means of an order in this case. No requirement for prior rulemaking exists.

Petitioner asserts that the order in this case is inadequate because the FDAB made no attempt to define immorality.

The order included the following Ultimate Findings of Fact and Conclusions of Law:

"ULTIMATE FINDINGS OF FACT

"(1) Ross carried on sexual deviate acts at the Adult World Bookstore which became known in the communities where he taught school.

"(2) Ross could not have an effective relationship with students or parents due to his Adult World bookstore activities.

"(3) Ross would have a doubtful effective relationship with teachers in the future due to his Adult World bookstore activities.

"(4) The facts the school district relied upon as set forth in the notice letter of December 14, 1979 which were incorporated in the dismissal letter of January 15, 1980 are true and substantiated and support the charges of immorality and gross unfitness.

"(5) The facts relied upon do not support the charges of inefficiency (ORS 342.865(1)(a)).

"CONCLUSIONS OF LAW

"The conduct of Frank W. Ross constitutes immorality (ORS 342.865(1)(b) and gross unfitness (ORS 342.175(1)(c) as incorporated into ORS 342.865(1)(i))."

In a subsequent section entitled "Discussion" the FDAB stated, "[W]hatever else 'immorality' may include, it certainly includes acts of deviate sexual intercourse as such acts are contrary to the statutes of Oregon." In a concurring opinion one board member distinguished *Burton v. Cascade School District,* 353 F Supp 254 (D Or 1973), from the present case by stating "[i]n the Cascade case there was no forbidden behavior, in the Ross case there was."

In his petition for rehearing and/or reconsideration petitioner challenged the FDAB's conclusion that his

conduct violated Oregon law.[10] In its order denying rehearing or reconsideration the FDAB responded, "[t]he issue is not whether the petitioner was guilty of criminal conduct."

■    We find that the order affirming petitioner's dismissal is inadequate. The FDAB nowhere sets forth any basis upon which it might have concluded that petitioner's conduct violated that standard. It is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them. *See Spray v. Board of Medical Examiners,* 50 Or App 311, 321, 624 P2d 125, *rev den* 291 Or 117 (1981). This is required both for purposes of meaningful judicial review and to ensure that the agency gives responsible attention to its application of the statute. *See Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975). *Springfield* illustrates that:

> "* * * The requirement of ORS 183.470 that the order contain findings of fact and conclusions of law is a requirement that the reasoning by which the agency applies a statute to facts to reach a result be expressed in the order. * * * If the statute requires interpretation, * * * the interpretation and the agency's rationalization of it are properly a part of the reasoning of the order. Thus, under ORS 183.470, the order itself is the instrument by which an agency demonstrates that a particular interpretation or application of a statute is within a generally expressed legislative policy." 290 Or at 227.

Because there is no rationale to support the conclusion that petitioner's conduct was immoral dismissal on this ground is remanded to the FDAB for a determination of whether the facts as to immorality are adequate to justify the statutory grounds.

Reversed and remanded.

**PETERSON, J.,** dissenting.

For the following reasons, I dissent.

---

[10] The Preliminary Investigation Report produced by the Teacher Standards and Practices Commission in response to the district superintendent's complaint seeking revocation of petitioner's teaching certificate included an opinion by an Assistant Attorney General that petitioner had committed no crime. The Report was in evidence before the FDAB. There are no allegations that petitioner's conduct constituted a crime. Petitioner's only involvement in the nuisance injunction was as one of thirty to forty potential witnesses for the prosecution.

First: After construing ORS 342.905(5) the majority misapplies it to the FDAB orders.

Second: The majority errs in holding that a Teacher Standards and Practices Commission (TSPC) order declining to order a hearing on a complaint for revocation of petitioner's teaching certificate bars the FDAB from considering the gross unfitness charge.

Third: Petitioner has never claimed that the FDAB is barred from considering the gross unfitness claim because of the TSPC order. The majority errs in considering and deciding an important question which has not been raised by any party before the school board, the FDAB, the Court of Appeals, or this court, and which has not been briefed, argued or considered by anyone other than this court.

## THE MAJORITY HAS MISAPPLIED THE RULE STATED IN ITS OWN OPINION

Although I largely agree with the majority's construction of the statute, I do not agree with its application of the statute to the order involved in this case. ORS 342.905(5) provides:

"When the Fair Dismissal Appeals Board panel has completed its hearing, it shall prepare a written report and send it to the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction. The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to arbitrariness. * * *"

I perceive that the majority holds:

1. The statute first requires that FDAB determine whether the facts upon which the district based its

dismissal are "true and substantiated." This is a species of fact finding. Here, there is no dispute on the facts.

    2.   FDAB then makes a legal determination: Are the relevant facts "adequate to justify the statutory grounds cited"?

    3.   Finally, FDAB decides whether dismissal is unreasonable, arbitrary, or excessive.

FDAB does not itself decide whether dismissal is to be ordered. That is the district's decision, and FDAB's function, once it determines the facts, is in the nature of an appellate tribunal.

    FDAB upheld the dismissal. The majority, citing *Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980), remands stating:

> "* * * Because there is no rationale to support the conclusion that petitioner's conduct was immoral dismissal on this ground is remanded to the FDAB for a determination of whether the facts as to immorality are adequate to justify the statutory grounds." 294 Or at 370.

Remand is not necessary. Even under *Megdal,* the FDAB orders are sufficient.

    *Megdal* involved a dentist whose license was revoked by the State Board of Dental Examiners for "unprofessional conduct." On appeal we held that although the term "unprofessional conduct" was not unconstitutionally vague, 288 Or at 303, the order of revocation must nonetheless be reversed because "the term ['unprofessional conduct'] cannot be applied without prior rulemaking [by the agency]." 288 Or at 305.

    We pointed out that legislatively created licensing standards fell within three categories:

> Class 1:  "* * * [N]orms of conduct that are uniformly or widely recognized in the particular profession or occupation, apart from the views of the agency itself * * *. [I]ts application would depend not on interpreting the law or making rules but on finding what the existing standards in fact are." 288 Or at 304.

> Class 2:  Standards expressed in general terms, to be "interpreted" by the agency, without rules, and judicial review for consistency with legislative policy.

Class 3: Standards requiring the promulgation of rules. Without prior rulemaking, the standards cannot be applied. 288 Or at 305.

*See* footnote 7 of the majority opinion.

*Megdal* held that the term "unprofessional conduct" fell within the third category, and because the agency had not promulgated rules, "there was no legal ground to revoke his license." 288 Or at 321. The majority in the case at bar concludes that the term "immorality" falls within the second category and remands for the agency to enter a further order.

In a sense, the majority is trying to squeeze this case into a *Megdal* mold when it is not, strictly speaking, a *Megdal* case. In struggling to make this into a clean *Megdal* case, the majority makes several errors.

In *Megdal*, the agency charged with making the license revocation decision was the Board of Dental Examiners. In the case at bar, the agency charged with making the dismissal decision is the school district. FDAB does not occupy the same position as did the Board of Dental Examiners. It is, in a sense, an appellate tribunal charged with determining facts and then deciding whether the action of another agency, based upon those facts, is permissible and whether dismissal is unreasonable, arbitrary or excessive.

With respect to a Class 2 case, we stated in *Springfield Education Assn v. School Dist.*, 290 Or 217, 227-28, 621 P2d 547 (1980):

"The dispositive question of law on review, under this section, is whether the agency action is within the legislative policy which inheres in the statutory term. An agency interpretation may be given an appropriate degree of assumptive validity if the agency was involved in the legislative process or if we infer that it has expertise based upon qualifications of its personnel or because of its experience in the application of the statute to varying facts. Judicial deference, however, is not automatic or unreasoning. If a statute must be interpreted to determine its applicability to the facts of a contested case, then, it is necessary for the agency to express in its order, to the degree appropriate to the magnitude or complexity of the contested case, its reasoning demonstrating the tendency of the order to advance the policy embodied in the words of

the statute. Explicit reasoning will enable the court on judicial review to give an appropriate degree of credence to the agency interpretation. * * *" 290 Or at 227-28.

The FDAB consists of 20 members: five permanent teachers; five school administrators; five school board members; and five public members. I would defer to their expertise.

I believe that the FDAB orders sufficiently state the rationale underlying the conclusion to uphold the dismissal for gross unfitness and immorality. The majority orders remand "for a determination of whether the facts as to immorality are adequate to justify the statutory grounds." 294 Or at 370. FDAB has already done that.

There are two FDAB orders. We must first examine the orders to see what findings and conclusions the FDAB made. I will briefly summarize them. These quotations are from the first FDAB orders.

"* * * Ross was employed as librarian in both Camp Creek and Mohawk Schools. * * *

"* * * * *.

"Camp Creek and Mohawk are small rural communities about ten (10) miles from the administration building located in Springfield. Camp Creek had an enrollment range of ninety (90) to one hundred twenty (120) students. Mohawk had an enrollment range of one hundred thirty (130) to one hundred fifty-five (155) students. * * *.

"* * * * *.

"A police officer with the Eugene Police Department, assigned to the criminal intelligence section, made the following observations between January 3, 1979 and January 18, 1979 [at the Adult World Book Store in Eugene]:

[The report then describes, in express detail unnecessary to set forth in this opinion, the sexual acts which were observed at the Adult World Book Store and the specific sexual conduct of petitioner and another man at the store.]

"When Ross returned to his librarian position in the schools in June of 1979, the principal of Camp Creek and Mohawk schools received ten (10) to twelve (12) telephone calls from parents during the first week. The personnel director of the school district received twenty some phone

calls. The calls complained of Ross being a teacher in the school district.

"The principal and school district received thirty-one (31) written letters from parents objecting to continuing Ross as a teacher in their community."

I shall not repeat the findings that are quoted in the majority opinion. The FDAB order also contains several pages of "Discussion" relating to immorality and unfitness which contain the FDAB analysis and additional statements of fact.

"Ross was involved in acts of sexual deviation. The communities where he taught became aware of his conduct. Parents in the communities did not want their children being taught by Ross because of his known life-style.

"* * * * *.

"Ross voluntarily chose his lifestyle. He practiced his lifestyle in the general community where he taught. *His lifestyle included acts of deviate sexual intercourse in a public place.* Ross knew or should have known that his lifestyle would not be acceptable to the parents and school district. He knew or should have known that upon discovery of his lifestyle and the notoriety given to such a lifestyle, he would be ineffective as a teacher, thus rendering him grossly unfit to teach. (Emphasis added.)

"* * * * *.

"Ross was involved in acts of deviate sexual intercourse in a public place. *He is not charged with being a homosexual. He is charged with immorality.* The admitted acts of Ross at Adult World were acts of deviate sexual intercourse. Whatever else 'immorality' may include, it certainly includes acts of deviate sexual intercourse as such acts are contrary to the statutes of Oregon. (Emphasis added.)

"* * * * *.

"This panel concludes that based upon the evidence presented, the facts were true and substantiated. * * * The Board was justified in dismissing Ross on the grounds of immorality and gross unfitness. *Both grounds were proven.* Either ground will support the dismissal action by the Board. * * *" (Emphasis added.)

Because of the FDAB conclusion that the petitioner's conduct was "contrary to the statutes of Oregon," petitioner filed a petition for reconsideration with FDAB in

which he argued that no criminal statutes had been violated. Thereafter, FDAB entered this further order denying the petition for reconsideration, stating in part:

"Petitioner Frank Ross petitioned the Fair Dismissal Appeals Board for rehearing and reconsideration.

"Upon consideration of the petition, the panel concludes that said petition should be denied for two reasons.

"1) *The issue was not whether the petitioner was guilty of criminal conduct.*" (Emphasis added.)

I disagree with the majority's conclusion that "there is no rationale to support the conclusion that petitioner's conduct was immoral." On the contrary, it is clear that the reason for the school board dismissal and the FDAB orders was their belief that the petitioner engaged in sexual acts — anal intercourse — in a store open to the public, and that because of widespread newspaper publicity concerning the Adult World Bookstore and because of knowledge of persons in the Mohawk and Camp Creek communities, petitioner "could not have an effective relationship with students or parents." The decision is not ours to make. It is either for the school board or FDAB. There is substantial evidence to support the decisions. I am hard put to hypothesize how, on remand, FDAB can say it more clearly than it already has.

The FDAB orders contain several references to the term "deviate sexual intercourse." The orders do not define the term nor do they refer to the definition contained in ORS 163.305(1):

"(1) 'Deviate sexual intercourse' means sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."

There is no question that petitioner was involved in a form of deviate sexual intercourse, as that term is defined in ORS 163.305(1). Whether or not the FDAB had that definition in mind is not clear. I read the FDAB orders to say that petitioner's conduct constituted deviate sexual intercourse and that that was, under the circumstances, immoral.

The FDAB took pains to point out that petitioner was not charged with being a homosexual, and he was not

charged with any kind of sexual conduct occurring in his own home. The repeated FDAB references to deviate sexual intercourse convinces me that FDAB likely had a definition similar to the ORS 163.305(1) definition in mind, and that because the events occurred in a store open to the public, the conduct constituted "immorality."[1]

The FDAB order sets forth the rationale for its determination that petitioner's conduct constituted immorality. For that reason alone, I would affirm.

## THE MAJORITY ERRS IN HOLDING THAT BECAUSE THE TEACHER STANDARDS AND PRACTICES COMMISSION DISMISSED A COMPLAINT FOR LACK OF PROBABLE CAUSE TO HOLD A HEARING, ITS DETERMINATION BARS FDAB FROM CONCLUDING THAT THE PETITIONER WAS GROSSLY UNFIT

Following this incident, the Springfield District superintendent filed a complaint with the Teacher Standards and Practices Commission (TSPC) seeking revocation of petitioner's teaching certificate for gross unfitness.[2] TSPC conducted a preliminary investigation. The minutes of its May 17, 1979, meeting contain this entry:

"RESOLVED, That after completing the preliminary investigation on the complaint of Superintendent Springfield School District dated March 27, 1979, the Commission finds a lack of probable grounds for action against the teacher under ORS 342.175-342.177 and therefore dismisses the matter."

The majority holds: "Where the Commission has determined that a particular set of facts does not constitute grounds for revocation neither the school board nor the FDAB may reach a different interpretation." 294 Or at 367. The majority errs on this point, as well. Professor Davis has written:

"* * * [A]s a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata [by which Professor Davis means both collateral estoppel and res judicata] as developed in the court system are fully

---

[1] *Compare* the dissenting opinion, texts and authorities cited in the dissenting opinion of Tobriner, J., in *Pettit v. State Board of Education*, 109 Cal Rptr 665, 513 P2d 889, 894-899 (1973). *See also* Comment, 61 Cal L Rev 1442 (1973).

[2] See footnote 1 of the majority opinion.

applicable to *some* administrative proceedings. The reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations as they are for most judicial determinations. The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor." 2 K. Davis, Administrative Law Treatise § 18.02, at 548 (1958).

*See also Shannon v. Moffett,* 43 Or App 723, 604 P2d 407 (1979); *Oregon City Fed. of Teachers v. OCEA,* 36 Or App 27, 584 P2d 303 (1978) (Tanzer, J.) (recognizing the doctrine of collateral estoppel in agency proceedings).

A prerequisite to the application of the doctrine of collateral estoppel is the presence of a "full and fair opportunity to contest the issue in the first action." *State Farm v. Century Home,* 275 Or 97, 550 P2d 1185 (1976). An examination of the TSPC proceeding shows that the school board had no "full and fair opportunity" to contest the issue of "gross unfitness" in the TSPC proceeding. TSPC decided, after a nonadversary preliminary investigation and a meeting in executive session, that it would dismiss the complaint made by the school board and hold no hearing under ORS 342.177. The school board was not given an opportunity to be represented by counsel and had no opportunity to present evidence in an adjudicatory setting by calling, examining or cross-examining witnesses or presenting other evidence.

Before the school board can be collaterally estopped from litigating the issue of "gross unfitness," that issue must have been adjudicated. As Professor Davis writes, "In name and tradition 'res judicata' means thing adjudicated. Only what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata." 2 K Davis, Administrative Law Treatise § 18.08, at 597 (1958). The TSPC action here was not adjudicative. It was investigatory and should have no effect upon this dismissal proceeding.

The person asserting collateral estoppel has the burden of asserting the defense and proving its applicability. *State Farm v. Century Home,* 275 Or 97, 104,

550 P2d 1185 (1976). This rule applies as well in administrative law proceedings. Mogel, *Res Judicata and Collateral Estoppel in Administrative Proceedings,* 30 Baylor L Rev 462, 463 n 11 (1978).

The majority may say that collateral estoppel and res judicata are not involved. The majority does say that FDAB is barred from considering the gross unfitness charge because the TSPC decision interprets the statute and that FDAB cannot engage "in a more restrictive interpretation of that term than that rendered by the Commission." Majority opinion at 367. I believe that the reasons which underlie the principle of collateral estoppel still apply. The "set of facts" which were before the TSPC, whether for interpretation or decision, are not the same as those before the FDAB (or at least, there has been no adjudication by FDAB that they were or were not), and TSPC has made no adjudication. Even conceding that TSPC alone can interpret ORS 342.865(1)(i), I would hold that its refusal to order a hearing has no more effect, for rule making or adjudicative purposes or collateral estoppel purposes, than a grand jury returning a "not true" bill.

In a very real sense, the majority's decision on this point represents the ultimate anomaly. Although the FDAB orders are replete with facts to support its conclusions that the petitioner was properly dismissed for gross unfitness or immorality, the majority remands the immorality charge because the FDAB orders contain "no other rationale." Yet, the majority gives full adjudicative effect to a TSPC order which contains no findings, no conclusions, no analysis, no rationale, which was not entered after a hearing, and as to which the school district had no opportunity to be heard or present evidence.

TSPC is in the same relative position as was the Board of Dental Examiners in *Megdal.* I suspect that this court would hold that the term "gross unfitness" is either a Class 2 or Class 3 term. If *Megdal* and *Springfield Education Assn* are to have validity, we should apply the rationale underlying those decisions to the TSPC order of dismissal. We should give no effect to the TSPC order.

## THIS COURT SHOULD NOT CONSIDER AN ISSUE WHICH HAS NEVER BEEN RAISED BY ANY PARTY OR CONSIDERED BY ANY OTHER COURT OR AGENCY

I confess to particular dismay with the majority's holding that the TSPC determination on the "gross unfitness" claim bars FDAB consideration. I can find nothing in the record or briefs indicating that the issue was ever raised by the petitioner, much less considered by the FDAB or by the Court of Appeals. Had the question been raised, it is likely that evidence would have been presented and a decision made on the question. We should not consider the issue at all.

In summary, I would affirm the Court of Appeals and FDAB because the FDAB found that the facts that the school board "relied upon to support the statutory grounds cited for dismissal were true and substantiated," determined that the facts "are adequate to justify the statutory grounds cited," and in addition, the FDAB independently found that petitioner's conduct constituted "immorality" which affected his ability to teach in the community. Even under the majority's analysis, the decisions of the FDAB and Court of Appeals should be affirmed. We need not decide the question whether petitioner's dismissal for gross unfitness was correct because of the FDAB finding of immorality.

Campbell and Carson, JJ., join in this dissent.