Argued and submitted April 4, reversed and remanded for reconsideration June 6, reconsideration denied September 5, petition for review allowed November 6, 1990
(310 Or 547)

# JEFFERSON COUNTY SCHOOL DISTRICT NO. 509-J,
*Petitioner,*

*v.*

# FAIR DISMISSAL APPEALS BOARD et al,
*Respondents.*

## (88-6; CA A60800)
793 P2d 888

Nancy J. Hungerford, Oregon City, argued the cause and filed the brief for petitioner.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Fair Dismissal Appeals Board.

Robert Durham, Portland, argued the cause for respondent Carol Kari. On the brief were Mark Toledo, Margaret S. Olney and Bennett & Durham, Portland.

Before Graber, Presiding Judge pro tempore, Joseph, Chief Judge, and Richardson, Judge.

RICHARDSON, J.

Graber, P. J. pro tempore, dissenting.

## RICHARDSON, J.

Respondent Kari, a permanent teacher, was dismissed by petitioner school district for "immorality" and "neglect of duty," ORS 342.865(1)(b) and (d), after a police search and ensuing events brought to light evidence that her husband had been using their jointly owned home to grow and make sales of marijuana and that Kari was aware of the fact of the sales.[1] Kari appealed to the Fair Dismissal Appeals Board, which, by a two to one vote, reversed the dismissal and ordered her reinstated. The district seeks review, and we reverse.

Kari's job responsibilities included instruction and extracurricular participation in the district's anti-drug program. The district instituted that program in response to a significant student drug-use problem. FDAB found that Kari opposed the use of drugs and was "personally committed to the program." FDAB also made a finding pertaining to the training that Kari and other teachers received for the program and the relationship of personal involvement with drugs to their roles in the program:

> "In the [teacher training] workshop for [the program], teachers were told that they had to serve as 'role models' for students in the say-no-to-drugs campaign. The workshop instructor's notes contained the following statement:
>
>> " 'As drug education teachers, like it or not, we are confronted with the issues of drug use on a personal level. We are role models and all actions speak loudly.'
>
> "A workshop handout included the following statements:
>
>> " '*Favorable attitudes toward drug use.* Children often

---

[1] Both were charged with drug offenses. Kari was acquitted, and her husband was convicted.

At oral argument, Kari's attorney suggested that the Fair Dismissal Appeals Board's findings on the precise nature of Kari's knowledge were ambiguous. On the whole, it is not difficult to discern what FDAB found. It said in its seventh finding:

> "At some point prior to April of 1986, [Kari] became aware, also, that her husband was engaging in selling marijuana. She was also aware that he kept marijuana at their residence for the purpose of selling it."

In an ultimate finding, FDAB reiterated:

> "[Kari's] husband was using marijuana and was selling marijuana from their home. [Kari] was aware of the selling activity."

Because we remand, FDAB may, of course, clarify or reconsider its findings, if it considers that to be necessary.

have health-conscious anti-drug attitudes in late elementary school. When these attitudes change to become favorable toward the use of alcohol, tobacco, and marijuana, children are more likely to initiate drug use.'

" ' *"Here's Looking at You, 2000"* is a *prevention* curriculum: it focuses on the "gateway drugs," those drugs national norms indicate that young people are most likely to try first - nicotine, alcohol, and, in upper elementary school, marijuana. \* \* \*.'

"(Under a checklist for teachers:) '____4. Am I modeling what I want my students to do?' " (Emphasis in original.)

Kari did essentially nothing to deter her husband's use of their home for illegal drug activities. According to FDAB, she "did not know what she should do about the situation and, in fact, took no action other than to obtain counseling and urge her husband to obtain counseling." She told a police officer who participated in the search of the home

"that she was aware of her husband's dealing in marijuana and had been aware of it for over two years, that she didn't know what to do about his activities, that she had been concerned about the effect this might have on her job and that she was aware that he kept marijuana in the house for purposes of selling it. She told officer Campbell that she didn't condone her husband's activities but that he did 'his own thing' and she didn't get involved."

FDAB further found that her "reason was that she did not want to break up [the] family, which included two young children," and that "her husband, if he became angry, could be violent."

The district superintendent stated, in his letter recommending Kari's dismissal, *inter alia:*

"I conclude from the facts described above that you were aware of and acquiesced in your husband's use, manufacture, and sale of marijuana, and that you participated in such manufacture and sale at least to the extent of allowing property that you jointly owned to be used for such purposes.

"Your awareness, acquiescence, and failure to take any action to stop the manufacture and sale of a controlled substance on your property constitutes neglect of duty because you have a responsibility to serve as a role model for students and the community. This responsibility includes modeling

good citizenship and law abiding behavior. You also have a duty, under District policy and standards, to maintain effective relationships with students, parents, and other staff. As you were well aware, judging from your comments to the State Patrolman Campbell, knowledge of your acquiescence and participation in the manufacture and sale of marijuana could mean that some parents, students, and staff will be unwilling to work with you, to accord you their confidence and trust, and lose respect for you and the District.

"In addition, you have a duty to teach approved District curriculum, which includes the 'Here's Looking at You 2000' curriculum and 'Just Say No' clubs at the elementary level. Part of these curricular efforts is to teach students about the dangers of drugs and to encourage them to refuse to use drugs. * * * You were trained about your role in teaching these portions of the curriculum during inservice in August, 1987.

"Your knowledge, acquiescence, and involvement with drug-selling activities of your husband, and community knowledge of your indictment for possession of marijuana, will significantly diminish your ability to effectively teach this portion of the District curriculum, and will damage your overall credibility in the eyes of students and parents. You were aware or should have been aware that your actions would substantially conflict with District responsibilities and efforts of the District to fulfill those responsibilities."

The letter recommended dismissal on grounds of immorality as well as neglect of duty. The district board voted unanimously to dismiss Kari on both statutory grounds.

FDAB concluded that, although the "factual allegations charged against [Kari] are, for the most part, true and substantiated," those facts did not justify either statutory ground cited by the district for the dismissal. FDAB also concluded that, even if a showing of neglect of duty had been made, "dismissal was an unreasonable and clearly excessive sanction." *See* ORS 342.905(5). The district makes five assignments, only two of which we need address:[2] FDAB erred in concluding that the facts that the district alleged and FDAB found do not justify the charge of "neglect of duty" and in concluding that dismissal was unreasonable and excessive, even if neglect of duty had been shown.

---

[2] We reject the others without discussion.

■ Notwithstanding its finding that Kari had been instructed against personal drug involvement at the training workshop for the anti-drug program, FDAB stated in its findings, ultimate findings and conclusions, respectively:

"Teachers were told that they had to be 'role models.' However, no written or oral communication to teachers related specifically to off-duty conduct and no written or oral communication gave teachers any specific indication of what off-duty conduct would be considered unacceptable by the district.

"* * * * *

"[Kari] was aware that her husband's activities could potentially affect her job. However, she had never been informed what her duty, as a teacher, would be in such a situation, and she did not realize that failure to report her husband, failure to move out of the home or failure to get her husband to move out would be treated as cause for her dismissal.

"* * * * *

"The true and substantiated facts do not justify the statutory ground of neglect of duty because the district failed to prove notice to [Kari] of just what her duty was when she was aware of her husband's marijuana sales and failed to prove that any duty to do more than she did, under the circumstances, was so clear that she should have known of the duty despite lack of notice."

Moreover, according to FDAB, Kari did not understand that "her role in the district's say-no-to-drugs program or retention of her teaching position required her to report her husband's illegal activities or distance herself from him."

FDAB explained that the training workshop did not suffice to provide Kari with notice or a definition of her duty, because:

"The best warning to [Kari] appears to be the checklist item, 'Am I modeling what I want my students to do?' Even these warnings, however, appear to focus, essentially, on 'use,' by teachers, of alcohol, tobacco, marijuana or other drugs, and do not indicate just what off-duty behavior is inconsistent with the teachers' say-no-to-drugs role model responsibility.

"[The district's] case of notice to [Kari] of a duty neglected by her, therefore, is necessarily based on the premise that despite lack of actual notice, [Kari] *should* have known that

she could not, consistent with her teacher responsibilities, simply do nothing about her situation. (By 'doing nothing' we mean doing no more than obtaining counseling and urging her husband to obtain counseling.) There is not a sufficient basis for us to conclude, however, that she would have known her doing nothing was a violation of her duty to the district.

"* * * * *

"One could argue that [Kari] by living year after year with a person who sold marijuana, was representing, by her continued association with that person, that she herself condoned the sale of marijuana. Such a stance would be totally inconsistent with the district's stance against use of drugs. The problem is, we cannot say that she *should* have known that she should place so much importance on the appearance of condoning to the exclusion of her own personal, anti-drug conduct and to the exclusion of her need to keep her family together." (Emphasis in original.)

We disagree with FDAB's analysis in two particulars. First, its conclusion that Kari was not on notice that she had a duty and that her conduct violated it does not follow from the findings. The workshop training, as described in the findings, gave clear notice that off-duty personal drug involvement was contrary to a teacher's role in connection with the anti-drug instructional program. FDAB's thesis that the training notified teachers that drug *use* was proscribed, but did not alert them about other forms of drug involvement, is incorrect as a matter of law. No reasonable person could have come away from that training with the understanding that only personal use of drugs was forbidden or that allowing one's house to be used for drug trafficking was compatible with the duty of teaching students to "say no."

Our second point of disagreement, somewhat related to the first, is with FDAB's emphasis on the difficulties of Kari's personal and family situation. Although we are not unsympathetic to the dilemma with which she may have been confronted, the duty that she allegedly neglected was not a duty to eject her husband from the home, report him to the police or take any other measures with respect to him and her family. The duty was to preserve the integrity of her role as an anti-drug teacher, by not allowing *her* home to be used for marijuana sales. FDAB focused on the reasonableness of Kari's inaction in the light of her family circumstances and

concerns; the correct focus is on the propriety of her conduct in the light of her responsibilities to the district and her students. In effect, FDAB defined the issue away by treating a possible consequence of Kari's performance of her duty, damage to familial relations, as *being* the duty that the district failed to establish that she had. We conclude that FDAB misinterpreted and misapplied the statutory term "neglect of duty."[3]

■ A remand for reconsideration of the "neglect of duty" ground for dismissal is therefore necessary unless, as FDAB concluded, dismissal would be an arbitrary, unreasonable or excessive sanction, even if neglect of duty was established. However, FDAB's reasons for that conclusion were in large part the same as its reasons for concluding that there was no neglect of duty, *i.e.*, Kari "was faced * * * with the inevitability of the breakup of [her] family if she took action," and that she was not given sufficient notice that she had a duty and what it was. FDAB's explanations do not support its conclusion that the district imposed an excessive sanction. *See Ross v. Springfield School Dist. No. 19*, 294 Or 357, 363-64, 657 P2d 188 (1982).

We might agree with the general proposition in the dissent that FDAB may consider a teacher's personal circumstances to mitigate the sanction, even though they do not define her duty. Here, however, FDAB's conclusion that the sanction was excessive was based, in large part at least, on its earlier conclusion that Kari's personal circumstances *did* define her duty. As FDAB stated in the passage from its opinion quoted by the dissent, the sanction was excessive even if a "failure to report her husband's activities or [a] failure to separate herself from him amounted" to a neglect of duty. In other words, FDAB's reasoning on the sanction issue was premised on the same misperception of what Kari's duty was that rendered erroneous its reasoning on the neglect of duty issue. FDAB then weighed the cost of performance against the benefits of nonperformance of that misdefined duty in reaching its conclusion about the excessiveness of the dismissal.

---

[3] We do not imply that the question of *neglect* of duty can never be related to the conflicting demands of a teacher's personal and family life. However, here, FDAB effectively concluded that no duty *existed*, because the teacher chose to pursue a particular personal course that was in conflict with her duty.

Kari, it said, was faced "with the inevitability of the breakup of" her family and was not given notice and the opportunity "to show that she could refrain from associating with anyone, including her husband, who sold marijuana." FDAB's analysis of the sanction question was permeated by its miscast focus on the duty question and, if the former needs to be reached on remand, FDAB must reconsider that analysis.[4]

Reversed and remanded for reconsideration.

**GRABER, P. J.** pro tempore, dissenting.

I agree with the majority that FDAB erroneously measured the scope of a teacher's "duty" to her employer by the personal consequences of adhering to that duty. Nonetheless, that observation does not lead to the majority's result. Therefore, I dissent.

The majority correctly holds that the nature and extent of the teacher's duty to her employer are independent of the relative ease or difficulty of compliance in a particular case. "[T]he correct focus is on the propriety of her conduct in the light of her responsibilities to the district and her students." 102 Or App at 90. I also agree that Kari was on notice about what those responsibilities were. Accordingly, FDAB misinterpreted the statutory term, "neglect of duty."

From there, however, the majority leaps too easily to the conclusion that FDAB reached an erroneous result. FDAB said:

"Even if it could be said that failure to report her husband's activities or failure to separate herself from him amounted to cause for dismissal for neglect of duty, nevertheless dismissal was an unreasonable and clearly excessive sanction. Appellant had been a teacher with respondent for eleven years and her record showed nothing but satisfactory service. Appellant had been teaching the say-no-to-drugs curricula for several years, was personally against drug use and, to

---

[4] ORS 342.905(6)(a) provides that, if FDAB "finds that the facts relied on to support the [dismissal] recommendation * * * are untrue or unsubstantiated, or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal, * * * the teacher shall be reinstated." However, if FDAB's reversal of a dismissal is based solely on its determination that the sanction is excessive, it may not order reinstatement, without allowing further consideration of sanctions by the district school board. See ORS 342.905(5); *Thomas v. Cascade Union High Sch. Dist. No. 5,* 80 Or App 736, 724 P2d 330 (1986).

respondent's knowledge, was at all times effective in her promotion and implementation of the say-no-to-drugs program. In dealing with the situation of her husband's use of their home for selling marijuana, appellant was faced not only with the inevitability of the breakup of their family if she took action but also with the fact that her husband was prone to anger and could become violent. Appellant also had never been informed by the district just how much the appearance of condoning drug sales rather than appellant's actual conduct would matter to the district. Under these circumstances and without ever first giving a satisfactory teacher, such as appellant, the opportunity after notice of off-duty expectations to show that she could refrain from associating with anyone, including her husband, who sold marijuana, dismissal was not an objectively reasonable response to appellant's fault. Accordingly, we find that it was both an unreasonable and clearly excessive sanction."

Although her duty and its violation are not properly defined by the teacher's personal circumstances, *the sanction may be.* What is reasonable and proportionate in one case may not be in another, depending, for example, on a teacher's past work history and other aggravating or mitigating factors that are personal to the teacher. FDAB's role in reviewing the sanction is limited, *see Ross v. Springfield School Dist. No. 19,* 294 Or 357, 363-64, 657 P2d 188 (1982), but it does have a review function. Here, FDAB explained logically and in detail why it concluded that dismissal would be unreasonable or excessive, and the facts on which it relies in its discussion (such as Kari's past satisfactory record and the dilemma that she faced at home) are supported by substantial evidence in the record. *Our* scope of review does not permit us simply to substitute our judgment for the agency's. ORS 183.482. The majority does nothing more than to say that it would not have reached the same result that the agency did, when faced with the same facts. Even if we were "more correct," that is not our job. I dissent.