Argued and submitted May 17, affirmed, remanded for reconsideration of sanction November 20, 1985

PRATT,
*Petitioner,*

*v.*

REAL ESTATE DIVISION,
MORELLA LARSEN, COMMISSIONER,
*Respondent.*

(CA A32691)

709 P2d 1134

Eric Yandell, Salem, argued the cause for appellant. On the brief was Ray W. Shaw, Salem.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner appeals from an order of the Real Estate Commissioner permanently revoking his broker's license. ORS 696.301. He contends that the Commissioner misinterpreted the relevant statutes and imposed an unduly severe sanction. We review pursuant to ORS 183.482.

In November, 1979, petitioner obtained a real estate listing from the Giles for property in Wallowa County. Any sale of the property was subject to the Giles receiving title from the Burches, their sellers. The Giles had taken the property partly in exchange for other property which they had sold to the Burches. As part of the contract between the Giles and the Burches, the Burches agreed to obtain a survey of the property before July 1, 1980.

In February, 1980, the Webbs contacted petitioner about buying some recreational property. Petitioner showed them the Giles' property. Petitioner had not viewed the property for purposes of sale before that, and he was not familiar with its boundaries. However, he was aware that a survey was to be made as part of the contract between the Giles and the Burches. In showing the property to the Webbs, petitioner represented a fence line as a boundary when, in fact, it was not. That misrepresentation led the Webbs to believe that certain land was included in the sale when, in fact, some of the land did not even belong to the Giles.

After seeing the property, the Webbs signed an earnest money agreement to purchase it for $60,000; $30,000 was to be paid immediately and $30,000 more was to be paid by September 1, 1980. The purchase was subject to obtaining a septic tank permit, an adequate easement and a survey by September 1, 1980. The offer to buy was accepted by the Giles on February 4, 1980. Petitioner included the survey requirement in the earnest money agreement; he was aware that surveys normally were not conducted during the winter months in the area where the property was located.

The purchase was closed on March 20, 1980, by an attorney representing the Giles. As part of the closing, a contract was prepared that included the conditions contained in the earnest money agreement, including the requirement for a survey. Before closing, neither the Webbs nor petitioner

realized that part of the property shown the Webbs by petitioner was not being conveyed by the Giles to the Webbs.

In May, 1980, petitioner discovered that his representation of the fence line as the boundary was wrong. He notified the Webbs. On June 15, 1980, the Webbs and petitioner met with the Giles to try to resolve the problem. They decided that petitioner should attempt to acquire the disputed property from its owner. However, the owner did not want to sell it.

In June, petitioner proposed to the Webbs that he exchange property that he controlled for the Giles' property. On July 10, petitioner prepared and then signed an exchange agreement providing for the exchange of petitioner's property for the Giles' property. Petitioner's property was to include his one-acre water right, which was to be transferred to the Webbs with the deed. The Webbs signed the exchange agreement on July 28, 1980. Later, petitioner prepared a second exchange agreement to clarify the width of a reserved right-of-way. It also provided that a one-acre water right would be transferred with the deed. Petitioner and the Webbs signed that second agreement on August 18, 1980. On September 5, 1980, without consultation with the Webbs, petitioner ordered a title policy in the sum of $30,000 to cover the exchange, although the Webbs had just paid $60,000 for the property they were exchanging.

On September 15, 1980, petitioner advised the Webbs by letter that there was nothing involved in transfering the water right to them except sending a form to the Water Resources Department. In that letter, he also recommended $30,000 in title insurance for the exchange in order to save the Webbs $90 in fees. He did not disclose that he had already ordered $30,000 in title insurance. On September 22, 1980, petitioner completed an application to the Water Resources Department to transfer the water right.

The exchange was closed on October 8, 1980. The water right had not yet been transferred; it could not be transferred with the deed. A deed from petitioner to the Webbs, dated October 3, covering petitioner's property was recorded on October 7. It showed that the consideration for the exchange was $30,000. A deed from the Giles to the Webbs, dated April 14, 1980, was also recorded on October 7.

A deed from the Webbs to petitioner dated October 9, 1980, covering the Giles' property, was not recorded. It was held by petitioner, without the Webbs' knowledge, until November 9, 1982, when it was recorded. It was petitioner's undisclosed intention to withhold the recording of that deed until his application for transfer of his water right was approved. After the closing, the Webbs asked petitioner about the water right. He told them that the transfer had been approved and that he had paid the first year costs. Those representations were not true.

Petitioner's application to transfer his water right involved the transfer of the right and the transport of the water. The Water Resources Department was willing to transfer the water right but was concerned about the potential loss of the right, because the Hurricane Irrigation Ditch Company would not agree to transport the water. Without transportation of the water, the new water right would expire in five years for nonuse; and, once transferred, the water right could not be transferred back to petitioner. The Water Resources Department delayed approval of the transfer.

Over the next two years petitioner and his attorney, the Water Resources Department and the Hurricane Ditch Company engaged in extended discussions. Because of the refusal of the Hurricane Ditch Company to agree to transport water, petitioner withdrew his application. Later, he agreed to drill a well for the Webbs.

The Real Estate Commissioner concluded that petitioner had violated four sections of ORS 696.301. In 1980, ORS 696.301(1) provided that the Commissioner could revoke a license if she found that a licensee had

> "pursued a continued course of misrepresentation, or made any harmful misrepresentation or false promise in a matter related to professional real estate activity."

The Commissioner found

> "Delbert W. Pratt violated the provisions of ORS 696.301(1) (1979 Replacement Parts) as superseded by ORS 696.301(1)(1983 Replacement Parts) in that, by making inaccurate representations regarding the boundaries of the Gile property to Mr. and Mrs. Webb when he was showing the property, he made a harmful misrepresentation in a matter related to professional real estate activity."

In 1980, ORS 696.301(6) permitted sanctions if a licensee

"[m]ade, printed, distributed, or in any manner published misleading or untruthful advertising, descriptions or promises, of such character as reasonably to induce any person to act to his damage or injury."

The Commissioner found

"Delbert W. Pratt violated the provisions of ORS 696.301(6) (1979 Replacement Parts) as superseded by ORS 696.301(6) (1983 Replacement Parts) in that, by making inaccurate representations regarding the boundaries of the Gile property to Mr. and Mrs. Webb when he was showing the property, he made a misleading and untruthful description of the Gile property which was of such character as to reasonably induce a person to act to his damage or injury."

*Former* ORS 696.301(29) provided for license revocation, among other remedies, when the licensee

"[d]emonstrated negligence or incompetence in performing any act for which he is required to hold a licence."

The Commissioner found

"Delbert W. Pratt violated the provisions of ORS 696.301(29) (1979 Replacement Parts) as superseded by ORS 696.301(28)(1983 Replacement Parts) by reason, either separately or cumulatively, of the following facts:

"a)	By failing to determine the accurate boundaries of the Gile property before showing it to prospective buyers and more specifically, Mr. and Mrs. Webb, he demonstrated negligence in the performance of an act for which he is required to hold a license;

"b)	With his knowledge of the uncertainty of the boundaries on the Gile property, his drafting of an earnest money agreement which allowed for closing of the transaction up to five and a half months prior to the completion of a survey rather than delaying closing until a survey could be obtained, demonstrates negligence in the performance of an act for which he is required to hold a license;

"c)	By failing to obtain transfer of a water right prior to closing of the exchange with Mr. and Mrs. Webb or making the closing contingent upon obtaining the water right, he demonstrated negligence in the performance of an act for which he is required to hold a license;

"d)  By providing title insurance coverage in the sum of $30,000 to Mr. and Mrs. Webb with knowledge that the property they were exchanging had a recent sales price of $60,000 without first discussing such action and fully disclosing all potential ramifications, he demonstrated negligence in the performance of an act for which he is required to hold a license."

*Former* ORS 696.301(32) permitted sanctions if a licensee:

"[did] any act or conduct whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

The Commissioner found:

"Delbert W. Pratt violated the provisions of ORS 696.301(32) (1979 Replacement Parts) as superseded by ORS 696.301(31) (1983 Replacement Parts) by reason, either separately or cumulatively, of the following facts:

"a)  By failing to determine the accurate boundaries of the Gile property before showing it to Mr. and Mrs. Webb, he engaged in conduct which constitutes and demonstrates incompetency, untrustworthiness and improper dealings;

"b)  His drafting of an earnest money agreement which allowed for a survey of the Gile property to be made and delivered up to five and a half months after the closing of the transaction is conduct which constitutes and demonstrates incompetency, untrustworthiness and improper dealings;

"c)  By his representations to Mr. and Mrs. Webb that there would be no problem in obtaining a water rights transfer thereby inducing them to complete closing of their transaction prior to the completion of the water rights transfer, he engaged in conduct which constitutes and demonstrates incompetency, untrustworthiness and improper dealings;

"d)  By providing title insurance coverage in the sum of $30,000 to Mr. and Mrs. Webb with knowledge that the property they were exchanging had a recent sales price of $60,000, he engaged in conduct which constitutes and demonstrates incompetency, untrustworthiness and improper dealings."

■ Petitioner first contends that the Commissioner erred in concluding that he violated *former* ORS 696.301(1). He concedes that there was substantial evidence to support the Commissioner's conclusion that he misrepresented the boundary on the Giles' property, but he argues that there was no evidence that his misrepresentation caused any actual harm. Our review of the record would support a finding of actual harm although, as the Commissioner contends, a finding of potential harm is sufficient. *See Grabenhorst v. Real Estate Division,* 43 Or App 287, 602 P2d 1089 (1979), *rev den* 289 Or 1 (1980).

In 1981, the legislature deleted the word "harmful" from ORS 696.301(1) and replaced it with the phrase "a reasonable probability of damage or injury, whether or not damage or injury actually resulted." Or Laws 1981, ch 617, § 14.[1] That was the interpretation we gave subsection (6) of the statute in *Grabenhorst v. Real Estate Division, supra,* 43 Or App at 290:

> "Petitioner argues that subsection (6) is not violated unless there is proof of actual injury * * * caused by the false representation * * *. To violate this statute, however, an act need only create a reasonable possibility of harm regardless of whether harm actually occurred."

Rather than effecting a change in the law, the 1981 amendments to ORS 696.301 merely confirmed that the Division's previous interpretation of the term "harmful", to mean potential rather than actual harm, was consistent with legislative policy. The 1981 amendments, therefore, support the Commissioner's interpretation of the term "harmful." Because "actual harm" was not an element of ORS 696.301(1) in 1980, the Commissioner's order need not contain findings of such harm. The record supports the Commissioner's conclusion that petitioner's misrepresentation created at least a reasonable possibility of harm to the Webbs.

■ Petitioner next contends that the Commissioner

---

[1] ORS 696.301(1) now provides that disciplinary action may result if a licensee:

"Knowingly or negligently pursued a continued course of material misrepresentation in matters related to professional real estate activity, whether or not damage or injury resulted, or knowingly or negligently made any material misrepresentation or false promise in a matter related to professional real estate activity, if the material misrepresentation or material false promise created a reasonable probability of damage or injury, whether or not damage or injury actually resulted."

erred in concluding that he violated ORS 696.301(6). He argues that that subsection was intended to apply only to misleading or deceptive descriptions or promises communicated through print media. We do not read subsection (6) as narrowly as does petitioner. Petitioner made a misleading description "of such character as reasonably to induce any person to act to his damage or injury" by misrepresenting to the Webbs the boundary of the Giles' property. In *Grabenhorst v. Real Estate Division, supra,* we held that ORS 696.301(6) was violated when a licensee orally represented that a listing agreement he gave his clients was a standard agreement when, in fact, it was not. We conclude that petitioner's argument lacks merit.

3.      Petitioner also argues that the Commissioner erred in concluding that the same conduct violated different subsections of ORS 696.301. That question is answered by *Jensen v. Bd. of Dental Examiners,* 53 Or App 50, 630 P2d 912 (1981), and *Britton v. Bd. of Podiatry Examiners,* 53 Or App 544, 632 P2d 1273 (1981). In *Britton,* we noted that, when an administrative board imposes sanctions based on several grounds:

"Each ground must be justified in the evidence before that sanction may be upheld on appeal, even though any one alone would provide a basis therefore. *Palen v. State Bd. Higher Education,* 18 Or App 442, 463, 525 P2d 1047, *rev den* (1974). By corollary, an agency is not permitted to permute a single act of misconduct into two or more by affixing different labels to the act." 53 Or App at 553-54.

In *Jensen v. Bd. of Dental Examiners, supra,* we found that the petitioner's misconduct, involving two different patients, constituted only two violations rather than the eight brought against him.

Here, the violations of ORS 696.301(1) and (6) are based on a single allegation that petitioner misrepresented the boundary line. Thus, the Commissioner has improperly permuted "a single act of misconduct into two or more by affixing different labels to the act." *See Britton v. Bd. of Podiatry Examiners, supra,* 53 Or App at 553-54. Similarly, subpart (a) of the charged violations of ORS 696.301(29) and (32) are based on the same allegation of misconduct.[2]

---

[2] The Commissioner also charged petitioner with violations of both ORS 696.301 (29) and (32) for each of three other discrete acts: (1) structuring the transaction to allow closing before the survey of the Giles' property; (2) misrepresentation about the transfer of the water right; and (3) inadequate disclosure about title insurance.

It was not improper for the Commissioner to distinguish petitioner's clearly separate acts related to the same transaction. *Britton v. Bd of Podiatry Examiners, supra.* However, it was improper for the Commissioner to find more than one violation based on the same discrete act.[3] Therefore, we remand the case for reconsideration of the sanction. On remand, the Commissioner may, but is not required to, conclude that the several discrete violations found against petitioner constitute grounds for permanent revocation of his license.[4]

■ Because petitioner's other assignments of error may be relevant on remand, we now consider them. Petitioner contends that he did not violate *former* ORS 696.301(29), because negligence is a "delegative term" that must be defined by rule or expert testimony before it may be used as a basis for discipline. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980). In *Springfield Education Assn. v. School Dist.,* 290 Or 217, 223-29, 621 P2d 547 (1980), the Supreme Court noted that statutory terms fall into three classes. The class into which a particular term falls dictates the agency's responsibility for defining that term. Terms of precise meaning are terms of common or technical meaning that require little more than application to the particular facts before the agency. Inexact terms comprise a complete expression of legislative policy, and the agency's responsibility is to interpret the term consistent with that policy, which can occur through contested case orders.

Here, "negligence" is properly characterized as an inexact term. Its context, within the statutory framework, indicates that it was intended to embody a complete expression of legislative meaning. *Former* ORS 696.301(29) provided that a licensee could be disciplined for negligence "in performing any act for which he is required to hold a license."

---

[3] The record would support a finding that petitioner committed four discrete acts in violation of ORS Ch 696: (1) misrepresentation of the boundary; (2) drafting the earnest money agreement and structuring the transaction to allow closing before the survey of the Giles' property; (3) misrepresentation about the water right transfer; and (4) inadequate disclosure about the title insurance.

[4] The Commissioner's decision to revoke petitioner's license was also based on his history of prior administrative matters, including a prior revocation of his associate broker's license, as well as what she found to be "a continuing lack of competence in carrying out professional real estate activity which endangers the public."

By limiting the scope of the term to acts contemplated by ORS chapter 696, the legislature made a complete expression of its intended meaning. All that is left is for the agency to apply the term consistent with that meaning. The Commissioner has done so here. We find no error.[5] *See Ross v. Springfield School Dist. No. 19,* 294 Or 357, 657 P2d 188 (1982).

■ Petitioner contends that the Commissioner erred in concluding that he violated *former* ORS 696.301(32). He argues that the Commissioner failed to articulate any rationale for her findings and that the term "incompetency" is a delegative term. *See Megdal v. Board of Dental Examiners, supra.* Examination of the Commissioner's conclusions of law and the accompanying discussion provides a sufficient nexus between the facts found and the conclusions drawn. The term "incompetency" is an inexact term that the Commissioner permissibly interpreted through an order in a contested case. Petitioner contends that, because subsection (32) includes acts "of a different character specified in this section," definitional rulemaking is necessary. *See Megdal v. Board of Dental Examiners, supra,* 288 Or at 313. Assuming that that is a correct interpretation of the statute, the Commissioner determined that petitioner's incompetency resulted from the cumulative effect of his repeated violations of ORS 696.301, not from some act external to the statute. That was appropriate. We find no error.

Affirmed; remanded for reconsideration of sanction.

---

[5] Petitioner contends that it was necessary for the Commissioner to prove the elements of common law negligence. The term "negligence" has a common meaning, and it is that meaning that the legislature intended. In *Grabenhorst v. Real Estate, supra,* 43 Or App at 291, we noted that the Oregon Real Estate License Law was not enacted to codify tort law.

Petitioner also contends that the Commissioner's conclusion that he was negligent in closing the sale of the Giles' property without protecting the Webbs, in failing to transfer the water right before closing and in failing to adequately consult with the Webbs concerning the amount of title insurance are not supported by substantial evidence. We disagree.